THE UNITED STATES OF AMERICA *ex rel.* THE TARBELL GROUP, LLC,

      Plaintiff,

v.

BRISTOL TN-VA ASSOCIATION OF REALTORS, *et al.*,

      Defendants.

No.: 1:25-cv-00111-TRM-MJD

CHIEF JUDGE MCDONOUGH
MAGISTRATE JUDGE DUMITRU

**Defendants Lakewood Golf and Country Club, RiverBend Country Club, Inc., and the Tullahoma Chamber of Commerce's**
**Memorandum of Law in Support of Motion to Dismiss**

# Table of Contents

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 1

    A. The Paycheck Protection Program ............................................................. 1

    B. Publicly available information about PPP loans .................................... 2

    C. Parties ............................................................................................................ 2

        1. Lakewood Golf and Country Club ................................................ 2

        2. RiverBend Country Club .................................................................. 2

        3. The Tullahoma Chamber of Commerce ....................................... 3

        4. The Tarbell Group, LLC ................................................................. 3

    D. The Complaint's allegations and the government's declination to intervene. ...................................................................................................... 4

III. LEGAL STANDARDS ............................................................................................. 5

    A. Rule 12(b)(6) and Rule 8(a) ........................................................................ 5

    B. Rule 9(b) ......................................................................................................... 6

IV. ARGUMENT .............................................................................................................. 6

    A. The Complaint is barred by the public-disclosure bar ........................... 6

        1. The Complaint is based entirely on public information .............. 7

        2. The Complaint's allegations are substantially the same as those contained in public disclosures. .................................................. 11

        3. The Tarbell Group is not an original source ............................. 12

    B. The Complaint fails to meet the pleading requirements of Rules 8(a) and 12(b)(6). ...................................................................................................... 13

    C. The Complaint also fails to meet Rule 9(b)'s heightened pleading standard. ........................................................................................................ 14

V. CONCLUSION .......................................................................................................... 17

i

## I.   INTRODUCTION

In this case, The Tarbell Group, LLC ("the Tarbell Group") brought a False Claims Act ("FCA") complaint against 22 unrelated defendants, based entirely on publicly available loan-and-tax information, and devoid of specific facts. The government investigated and declined to intervene. Nonetheless, the Tarbell Group proceeded with litigation, just as it has with at least 17 other boilerplate complaints filed across the country. This motion to dismiss is brought by three defendants, Lakewood Golf and Country Club ("Lakewood"), RiverBend Country Club ("RiverBend"), and the Tullahoma Chamber of Commerce ("the Chamber") (collectively, "Defendants"), two small-town country clubs and a rural chamber of commerce, respectively. The question before the Court is whether this complaint can survive the FCA's public-disclosure bar and the applicable federal pleading requirements. The answer is no. The FCA's public-disclosure bar precludes actions based on publicly disclosed information; Rules 8(a) and 12(b)(6) require sufficient facts to plead a plausible claim; and Rule 9(b) demands particularized fraud allegations. The complaint fails on all three grounds. Accordingly, the Court should grant the motion and dismiss the complaint with prejudice.

## II.   BACKGROUND

### A.   The Paycheck Protection Program

In response to the COVID-19 pandemic in 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136. The CARES Act instructed the Small Business Administration ("SBA") to implement a program to guarantee, forgive, and reimburse private loans made to certain

organizations by private lenders. *Id*. That program—the Paycheck Protection Program ("PPP")—took effect in March 2020 and thereafter was amended several times, including to modify the eligibility criteria. Compl. ¶¶ 30-33.

## B. Publicly available information about PPP loans

The PPP was widely publicized, and several sources tracked and publicly disclosed information about PPP loans, including: (1) https://pandemicoversight.gov (last visited May 14, 2026), a government website maintained by the Pandemic Response Accountability Committee of the Council of the Inspectors General on Integrity and Efficiency, *see* CARES Act, § 15010, 134 Stat. at 533-40; and (2) ProPublica.org, an investigative news site with a subpage entitled "Tracking PPP," available at https://projects.propublica.org/coronavirus/bailouts/ (last visited May 14, 2026). Both websites contain easily accessible public information about every PPP loan issued, including, as pertinent here, the loans obtained by Defendants.

## C. Parties

### 1. Lakewood Golf and Country Club

Lakewood is a country club located in Tullahoma, Tennessee. At all relevant times, it operated as a non-profit tax-exempt recreational club under 26 U.S.C. § 501(c)(7). Compl. ¶ 17. In early 2020, Lakewood applied for a PPP loan to help sustain the club and pay its employees. The SBA approved Lakewood's loan on April 16, 2020, for $112,000, and the loan was later forgiven on November 3, 2020. *Id*. Exhibit 1.

### 2. RiverBend Country Club

RiverBend is a country club located in Shelbyville, Tennessee. At all relevant times, it operated as a non-profit tax-exempt recreational club under 26 U.S.C. §

2

501(c)(7). *Id.* ¶ 18. In early 2020, RiverBend applied for a PPP loan to help sustain the club and pay its employees. The SBA approved RiverBend's loan on April 16, 2020, for $126,197, and the loan was later forgiven on August 5, 2021. *Id.* Exhibit 1.

### 3. The Tullahoma Chamber of Commerce

The Chamber is a chamber of commerce for the Tullahoma, Tennessee community. At all relevant times, it operated as a non-profit tax-exempt chamber of commerce under 26 U.S.C. § 501(c)(6). *Id.* ¶ 12. In early 2020, the Chamber applied for a PPP loan to help sustain its organization and pay its employees. The SBA approved the Chamber's loan on April 27, 2020, for $22,800, and the loan was later forgiven on February 11, 2021. *Id.* Exhibit 1.

### 4. The Tarbell Group, LLC

The Tarbell Group is a limited liability company organized and based in Virginia. Compl. ¶ 3. It has no connection to the Eastern District of Tennessee or to any defendant in this matter. *Id. passim.* Publicly available records indicate that the Tarbell Group was formed less than two years ago on May 17, 2024[1] and has since brought at least 17 separate FCA qui tam complaints nationwide, many premised on nearly identical allegations about PPP loan eligibility.[2]

---

[1] *See* Virginia State Corporation Clerk's Information System, Business Entity Search, available at https://cis.scc.virginia.gov/EntitySearch/Index (last visited May 14, 2026) (listing The Tarbell Group, LLC as formed on May 17, 2024). *See also infra* n.4 (describing contemporaneously filed motion for judicial notice) & DE 61-5 (exhibit to motion for judicial notice related to Virginia business entity search).

[2] *See, e.g., United States ex rel. Tarbell Group, LLC v. Dunlap Golf Club, Inc.*, No. 4:25-cv-00118, (S.D. Iowa Apr. 1, 2025) (alleging similar FCA claims involving PPP loans against 4 defendants); *United States ex rel. Tarbell Group, LLC v. Adams Cmty. Econ. Dev. Corp.*, No. 4:25-cv-00119, (S.D. Iowa Mar. 31, 2025) (same against 37

3

### D. The Complaint's allegations and the government's declination to intervene.

On April 2, 2025, the Tarbell Group filed a sealed *qui tam* complaint (the "Complaint") naming Lakewood, RiverBend, the Chamber, and 19 other defendants. The Complaint generically alleges that all 22 defendants violated the FCA by falsely certifying their eligibility for PPP loans. Compl. ¶¶ 39-41. No individuals associated with any defendant are named. Instead, the Complaint relies on a blanket reference to "Unknown John or Jane Does," *Id.* ¶25, through which "[e]ach institutional defendant . . . applied for and received one or more PPP Loans for which it was legally ineligible." *Id.* ¶ 34. The only other information alleged is (1) the defendants' addresses; (2) the code section under which defendants operated; and (3) a chart listing the defendants' PPP loan amounts, date approved, and forgiveness date. *Id.* ¶¶ 4-24, Exhibit 1.

After investigating for nine months, on January 7, 2026, the government declined to intervene. *See* DE 19. The Court later ordered that the Complaint be unsealed. On April 6, 2026, the Tarbell Group served the Complaint on Lakewood, RiverBend, and the Chamber. *See* DE 26-6, 26-7, 26-10.

---

defendants); *United States ex rel. Tarbell Group, LLC v. Appaloosa Horse Club*, No. 3:25-cv-00145, (D. Idaho Mar. 14, 2025) (same against 21 defendants); *United States ex rel. Tarbell Group, LLC v. Acoaxet Club, Inc.*, No. 1:24-cv-11950, (D. Mass. July 26, 2024) (same against 120 defendants); *United States ex rel. Tarbell Group, LLC v. Barrelville Outdoor Club*, No. 1:25-cv-00916, (D. Md. Mar. 19, 2025) (same against 6 defendants); *United States ex rel. Tarbell Group, LLC v. Am. Acad. of Envtl Eng'rs and Scientists Inc.*, No. 1:25-cv-00915, (D. Md. Mar. 19, 2025) (same against 69 defendants).

## III. LEGAL STANDARDS

To survive a motion to dismiss, an FCA complaint must satisfy both the ordinary standards of Rules 12(b)(6) and 8(a), as well as the heightened pleading standards of Rule 9(b). *See United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502-03 (6th Cir. 2008).

### A. Rule 12(b)(6) and Rule 8(a)

Rule 12(b)(6) provides that a complaint must be dismissed if it "fails to state a claim upon which relief can be granted." While a court must "accept all well-pleaded factual allegations as true," *Solo v. United Parcel Servs. Co.*, 819 F.3d 788, 793 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), it need not accept as true legal conclusions presented as factual allegations, *Iqbal*, 556 U.S. at 678-79. Similarly, under Rule 8(a), a complaint cannot survive a motion to dismiss if it relies on a "formulaic recitation of the elements" of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Further, as relevant here, a court should dismiss a complaint under Rule 12(b)(6) when the complaint's allegations affirmatively show that the claims are barred by the FCA's public-disclosure bar. *See United States v. Allstate Insurance Co.*, 620 F. Supp. 3d 674, 684 (E.D. Mich. 2022) (citing *United States ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016) (affirming dismissal based on the public-disclosure bar under Rule 12(b)(6))).

### B.    Rule 9(b)

Because FCA claims allege fraud, beyond meeting the standards above, they must also satisfy the heightened pleading requirements of Rule 9(b). *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). To satisfy Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). "[A] plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)). Further, in a multi-defendant case like this, the particularized allegations must be for each defendant. A complaint "may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *cf. United States v. Bornstein*, 423 U.S. 303, 313 (1976) (noting that the court must evaluate "the specific conduct of the person from whom the Government seeks to collect.").

### IV.    ARGUMENT

### A.    The Complaint is barred by the public-disclosure bar.

The FCA's public-disclosure bar "guard[s] against potential 'parasitic lawsuits' and 'opportunistic plaintiffs.'" *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th

6

813, 822 (6th Cir. 2021); *see also* 31 U.S.C. § 3730(e)(4)(A) (public-disclosure bar).[3] That provision "bars *qui tam* actions that merely feed off prior public disclosures of fraud." *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020).

To determine whether the public-disclosure bar applies, the Sixth Circuit applies a three-part test. *Rahimi*, 3 F.4th at 823. Under this test, the court asks (1) whether there were "public disclosures from which fraud might be inferred" before the filing of the *qui tam* complaint; (2) "how closely related the allegations in the complaint are to those in the public disclosures"; and (3) "whether the *qui tam* plaintiff is nevertheless an original source of the information." *Id.* (citations omitted). The Complaint fails under this analysis.

### 1. The Complaint is based entirely on public information.

A disclosure is public "if it appears in 'the news media' or is made 'in a criminal, civil, or administrative hearing, or in a congressional, administrative or Government Accounting Office report, audit, or investigation.'" *Rahimi*, 3 F.4th at 823 (citing *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009)

---

[3] The FCA's public disclosure bar, as amended in 2010, states in relevant part:

The court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

    (i)     in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

    (ii)    in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

    (iii)   from the news media,

unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

7

(quoting § 3730(e)(4)(A))). The public disclosure need not explicitly allege fraud; it need only "put the government on notice to the possibility of fraud." *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004).

Here, Defendants' PPP loans were publicly disclosed through a federal report (PandemicOversight.gov) and the news media (ProPublica.org). *See* 31 U.S.C. § 3730(e)(4)(A)(ii), (iii); *see also* DE 61-1–61-3, 61-6–61-8 (loan details from PandemicOversight.gov and ProPublica.org).[4] And every fact that the Complaint alleges about those loans appeared on those sites.

The PandemicOversight.gov website is maintained by the federal government and is accessible and searchable by any member of the public. As such, it qualifies as a "report" for purposes of the public disclosure bar. *See United States ex rel. Rosner v. WB/Stellar IP Owner, LLC*, 739 F. Supp. 2d 396, 407 (S.D.N.Y. 2010) (noting a "database available on a government website" qualifies as a "report" under the public-disclosure bar when "readily available," "free," and "easily navigable."). Courts have routinely held that PandemicOversight.gov constitutes a "report" for purposes of the public-disclosure bar. *See, e.g., United States ex rel. Relator LLC v. Kootstra*, No. 1:22-

---

[4] Defendants have contemporaneously moved the Court to take judicial notice of several public disclosures, including the PPP borrower information related to each Defendant that appears on PandemicOversight.gov and ProPublica.org. *See* DE 61 (Motion for judicial notice). As described in the motion, judicial notice of such information is routinely granted, and the information is properly considered at the motion-to-dismiss stage. *See, e.g., Philadelphia Indem. Ins. Co. v. Lacey*, Case No. 3:18-cv-38, 2018 WL 3999821, at *2 (E.D. Tenn. Aug. 21, 2018) (McDonough, J.) (citing, *inter alia*, *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005) ("[a]ll circuits to consider the issue have noted that a court may take judicial notice of at least some documents of public record when deciding a Rule 12 motion.")).

cv-00924, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024) (determining that PandemicOversight.gov "constitutes a 'federal report' within the meaning of the public disclosure bar"); *United States ex rel. Relator LLC v. Erskine,* No. 3:22-cv-1158, 2025 WL 796621, at *4 (S.D. Cal. Feb. 25, 2025) (same).

The ProPublica.org site is "a public website" on which "anyone can learn the location of organization that applied for a loan, the organization's industry, the lender of the loan, the date the loan was approved, the loan amount, and the loan status." *United States ex rel. Seikel v. Alvarez*, No. 1:23-cv-01, 2024 WL 1315869, at *4 (N.D. W. Va. Mar. 27, 2024) (citing ProPublica.org's "Tracking PPP" subpage and granting motion to dismiss based on public-disclosure bar). And courts have regularly held ProPublica.org to be "news media" for purposes of the FCA's public-disclosure bar. *United States ex rel. Relator LLC v. Cardinalli,* No. 5:23-cv-00113, 2025 WL 4036760, at *3 (C.D. Cal. Sept. 25, 2025); *United States ex rel. Relator LLC v. Nations Direct Mortgage LLC,* No. 2:22-cv-04784, 2026 WL 453464, at *3 (C.D. Cal. Jan. 5, 2026).

These sites contain all the loan information alleged in the Complaint. For example, the PandemicOversight.gov website reveals that on April 16, 2020, Lakewood was approved for a PPP loan in the amount of $112,000.00 and that a loan amount of $112,600.44 was forgiven on November 3, 2020. It also shows that Lakewood is a "non-profit organization" and in the "golf courses and country clubs" industry. *See* DE 61-1. PandemicOversight.gov shows the analogous information for the Chamber's and RiverBend's loans. *See* DE 61-2, 61-3. ProPublica.org has similar details for all three loans. *See* DE 61-6–61-8. Similarly, the relevant PPP rules and regulations and

9

SBA guidance and forms, including the dates when § 501(c)(6) and § 501(c)(7) organizations became eligible for PPP loans, are publicly available on government websites. *See* DE 61-4, 61-9, 61-10; *see also Cardinalli*, 2025 WL 4036760, at *4 (stating that "the SBA regulations governing PPP eligibility were themselves publicly available on SBA's website and published in the Federal Register" and dismissing case based on FCA's public-disclosure bar).

For the public-disclosure bar to apply, it does not matter if the publicly disclosed information comes from different sources. A public disclosure can "be piecemeal so long as the multiple sources of information reveal the allegation of fraud and its essential elements." *Rahimi*, 3 F.4th at 824. In making this determination, "[c]ourts use the following formula to explain that concept: [I]f $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements." *Holloway*, 960 F.3d at 844 (quoting *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 331 (6th Cir. 1998)). "In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *Holloway*, 960 F.3d at 844 (quoting *Jones*, 160 F.3d at 331).

Applying this framework, "X" represents that Lakewood and RiverBend, § 501(c)(7) organizations, and the Chamber, a § 501(c)(6) organization, obtained PPP loans. "Y" represents SBA's rule that § 501(c)(7) and § 501(c)(6) organizations were not eligible for PPP loans when Defendants obtained their loans. Both X and Y are

10

entirely based on public information, and those are the only variables that the Complaint relies on to allege "Z," that a fraud must have occurred.

### 2. The Complaint's allegations are substantially the same as those contained in public disclosures.

Courts next weigh "whether the allegations in the complaint are substantially the same as those contained in the public disclosure." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 522 (6th Cir. 2020) (quoting *Holloway*, 960 F.3d at 849.)

Here, the allegations in the Complaint are substantially the same as those publicly disclosed—indeed, they are essentially identical—and the Complaint contains no additional relevant factual allegations. Specifically, the details of Defendants' PPP loans, including their organization type, loan number, date approved, loan amount, forgiveness date, and amount forgiven are all substantially the same as the publicly available information PandemicOversight.gov or ProPublica.org or both. Likewise, the same PPP loan eligibility rules, including when § 501(c)(6) and (c)(7) organizations became eligible for PPP loans, were publicly available on the government websites sba.gov and federalregister.gov. *See* DE 61-4, 61-9, 61-10.

Courts faced with similar allegations have concluded that the public-disclosure bar precludes the actions. For example, in *Kootstra* the relator alleged that the defendant, a mortgage lender, applied for and obtained a PPP loan despite being ineligible for the loan. The court dismissed the complaint, finding that the "material elements of the alleged fraud" were publicly disclosed. *Kootstra*, 2024 WL 3666470, at *4 (holding that "material elements of the alleged fraud"—defendant's status as a mortgage lender and its receipt of a PPP loan—were publicly disclosed, barring the

11

claim); *see also Erskine*, 2025 WL 796621 at *4-*6 (holding that the public-disclosure bar precluded relator's claim that defendant obtained a PPP loan knowing it was ineligible because relevant information was disclosed on PandemicOversight.gov); *United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Group, Inc.*, No. 1:24-cv-00047, 2025 WL 2930796, at *7-*9, (N.D. Ill. Oct. 15, 2025) (holding that the public-disclosure bar precluded relator's claim that defendant obtained a PPP loan knowing it was ineligible because relevant information was disclosed on PandemicOversight.gov and news articles). As in those cases, the publicly disclosed information here is substantially the same as the allegations in the Complaint.

### 3. The Tarbell Group is not an original source.

Once there has been a public disclosure, the Court "shall dismiss [the] action" unless the relator is an original source of the information. 31 U.S.C. § 3730(e)(4)(A). A person is an "original source" if, before the public disclosure, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions. 31 U.S.C. § 3730(e)(4)(B).

The Tarbell Group is not an original source of any information underlying its claims. Indeed, it couldn't be: the Tarbell Group did not even *exist* until 2024—years after the loans at issue were applied for, forgiven, and disclosed publicly. Instead, the allegations are derived entirely from public information, and nothing in the Complaint suggests that the Tarbell Group—an out-of-state entity with no connection to any defendant—could have known and voluntarily disclosed such information. Nor can the Tarbell Group meet the second test. Nothing in the Complaint materially

12

adds to the public disclosures or shows that the Tarbell Group has any independent knowledge of the alleged fraud—or even how it could have such information. *See United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.,* 551 F. Supp. 3d 27, 45 (E.D.N.Y. 2021) ("As an entity that has never been involved with [defendant] prior to filing this action, and whose information is wholly derived from an anonymous third party and public disclosures, Relator, by definition, cannot have either direct or independent knowledge of the alleged fraud.") (cleaned up).

In sum, the Tarbell Group is not an original source. Accordingly, the claims against Defendants are barred by the public-disclosure bar and should be dismissed.

**B.    The Complaint fails to meet the pleading requirements of Rules 8(a) and 12(b)(6).**

Under Rule 8(a), a complaint cannot survive a motion to dismiss with only a "formulaic recitation of the elements" of a cause of action. *Twombly*, 550 U.S. at 555. But here, that is precisely what the Complaint does—formulaically recite the FCA statutory language without reference to any facts.

To plead an FCA claim, a plaintiff must sufficiently allege that: (1) the defendant made a false statement; (2) with scienter; (3) that was material; and (4) that the defendant submitted it to the government causing it to pay the claim. *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.,* 892 F.3d 822, 830 (6th Cir. 2018). Further, the Supreme Court has emphasized that the scienter element, among others, is "rigorous" and subject to "strict enforcement." *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016); *see also United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532 (6th Cir. 2012) (pre-

*Escobar* case emphasizing importance of scienter, which prevents the FCA from becoming "a vehicle to police technical compliance with federal obligations.")

Here, the Complaint offers little more than a rote regurgitation of the statute. For example, though not citing the statute, Paragraph 39 attempts to allege a cause of action under § 3729(a)(1)(A). But it simply recites the statutory language of that section without any specific allegations regarding the individual defendant, the claim at issue, why or how the claim was false, why or how that claim was material, or any allegations to suggest scienter. Compl. ¶39. Scienter is an especially glaring omission. It is subject to strict enforcement, yet the Complaint alleges no facts whatsoever to support Defendants' scienter, let alone *sufficient* facts to support a plausible inference that they knew that any certification was false. The same formulaic approach, with the same failings, applies to the would-be cause of action under § 3729(a)(1)(B), Compl. ¶40, and § 3729(a)(1)(C), Compl. ¶ 41. And no information anywhere else in the Complaint cures these failings.

### C. The Complaint also fails to meet Rule 9(b)'s heightened pleading standard.

Because the FCA is a fraud statute, Rule 9(b)'s heightened pleading standards apply independently. Under Rule 9(b), a plaintiff must allege sufficient details regarding the time, place, and content of the alleged false statements, the claim for payment made to the federal government, and the manner in which the false statements induced the government to make the claimed payment. *Ford Motor Co.*, 532 F.3d at 505. At the minimum, a complaint must "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873,

877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). That heightened standard serves the dual purpose of providing a defendant with minimal details necessary to defend itself and discouraging "fishing expeditions which appear more likely to consume a defendant's resources than to reveal evidence of actual wrongdoing." *Ford Motor Co.*, 532 F.3d at 504 (citing *Bledsoe*, 501 F.3d at 510).

The Complaint here offers no detail concerning the alleged statement made by Defendants. Although the Complaint references "falsely certifying" that it was eligible for a loan, *see* Compl. ¶¶39-41, it provides nothing more: no details regarding this false certification, its content, why it was false, when it occurred, how it was material, or how it induced the government to make a payment.

Beyond only invoking a generic "false certification," the Complaint fails to plead the circumstances of any alleged misconduct as Rule 9(b) requires. Specifically, it lacks the "who, what, when, where, and how" of the alleged fraud. For example, the Complaint does not specify the date or even general time frame of when any Defendant allegedly made false certifications. The chart attached to the Complaint lists three dates pertaining to actions taken by the government but not defendants. *See* Compl. Ex. 1. It lists the date the *government* made 501(c)(7) and (c)(6) organizations eligible for PPP loans, the date the *government* approved the loans, and the date that the *government* forgave the loan. *Id.* But nothing in the chart or elsewhere alleges when Lakewood, RiverBend, or the Chamber did anything. Nor does the Complaint identify any individuals from Lakewood, RiverBend, or the Chamber, or anyone who

acted on their behalf—the "who" pertaining to the alleged falsity. Instead, the Complaint refers generally to "Defendants Unknown John or Jane Does" to encompass all "directors, officers, employees, or otherwise agents" of any of the 22 organizations listed in the Complaint. *Id.* ¶ 25. Such generalizations do not meet the regular pleading standards, much less the heightened standards under Rule 9(b).

These failings are fatal, as courts have repeatedly held. For example, in *Bledsoe*, the Sixth Circuit affirmed the dismissal of a relator's complaint alleging FCA violations for failure to set forth the dates of the various FCA violations and for failing to specify the names of the individuals involved. 342 F.3d at 643. The court also criticized the complaint's improper blanket references to defendants when describing fraudulent behavior, noting that a plaintiff pleading fraud "may not rely upon blanket references" to all defendants named in a complaint. Instead, a complaint alleging fraud must apprise each defendant "of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Id.* (quoting *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981); *see also Jones v. Hood*, No. 2:24-cv-11164, 2025 WL 3091818, at *3 (E.D. Mich. Nov. 5, 2025) (noting that Rule 9(b) "prohibits plaintiffs from relying on 'group pleading'—that is, referring to [d]efendants collectively without specifying what each [d]efendant did.") (citations omitted).

Here, the Complaint relies entirely on blanket references. Instead of ascribing any specific conduct to Lakewood, RiverBend, the Chamber, or any of the other 22 defendants, the Complaint lumps them all together, generically alleging that "[d]efendants received approval for" and "[e]ach defendant did knowingly present."

16

Without pleading facts particular to acts taken by Defendants, the Complaint fails to satisfy Rule 9(b).

The Complaint presents the exact type of general allegations that Rule 9(b)'s heightened standard is designed to combat. Because such assertions cannot satisfy Rule 9(b)'s particularity requirement, the Complaint should be dismissed.

## V.     CONCLUSION

The Tarbell Group's Complaint is the prototype of a parasitic lawsuit, based on public information, offering no facts or connection to the defendants, and shotgun-filed to extract a quick settlement. The government declined to intervene for good reason. Now the Court should dismiss the Complaint. Congress added the FCA's public-disclosure bar to preclude exactly this kind of litigation, and the federal pleading standards provide further, independent bases for the Court to dismiss. For all the foregoing reasons, the Court should grant Lakewood, RiverBend, and the Chamber's motion and dismiss the Complaint with prejudice.

Respectfully submitted,

Dated: May 14, 2026

/s/ *Frankie N. Spero*
Frankie N. Spero (No. 29408)
fspero@bradley.com
Ty E. Howard (No. 26132) (admitted pro hac vice)
thoward@bradley.com
Hannah Grewal (No. 043089) (admitted pro hac vice)
hgrewal@bradley.com
Bradley Arant Boult Cummings LLP
ONE 22 ONE
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582
*Counsel for Lakewood Golf and Country Club, River-Bend Country Club, Inc., and the Tullahoma Chamber of Commerce*

17