## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

United States of America ex rel.  §
The Tarbell Group, LLC  §
  §
*Plaintiff,*  §
  §
v.  §      Case No. 1-25-cv-111
  §
Knoxville Racquet Club Inc.,  §
et al.  §
  §
*Defendants.*  §

## DEFENDANT KNXOVILLE RACQUET CLUB INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

### I.      PRELIMINARY STATEMENT

The Tarbell Group, LLC's ("Relator") action is exactly the sort of parasitic lawsuit that the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, public disclosure bar is meant to prevent. The public disclosure bar prohibits relators from bringing FCA claims when "substantially the same" conduct alleged has already been "publicly disclosed." See 31 U.S.C. § 3730(e)(4). A primary purpose of the public disclosure bar is to extinguish FCA claims, like the Relator's, that are not based on genuine whistleblower information.

Every scrap of information the Relator relies on in alleging violations of the FCA is readily available from SBA.gov, an official website of the United States government that is available to everyone. *See* Exhibit A. [1] Additionally, all of the information upon

---

[1] Rows regarding loan recipients other than the Club have been filtered out from Exhibit A for clarity and readability. However, the spreadsheet in its original form can be accessed in its entirety at SBA.gov, https://data.sba.gov/dataset/8aa276e2-6cab-4f86-aca4-a7dde42adf24/resource/d9972f0d-c377-46ac-8637-a5c1265377c8/download/public_up_to_150k_10_240930.csv.

1

which Relator relies also can be found on ProPublica.org, which is a nonprofit, publicly available, news outlet. *See* Exhibit B.

The SBA PPP loan database spreadsheet contains information on Knoxville Racquet Club Inc. (the "Club" or "Defendant"). Exhibit A. The spreadsheet lists the loan number for the loan, the loan amount, the date the loan was approved, the date the loan was forgiven, and the loan amount forgiven, among other information. *Id.* The material facts in the Complaint mirror, and are limited to, this available public information. Nothing in the Complaint alleges or plausibly suggests that Relator is an "original source" as required by 31 U.S.C. § 3730(e)(4) when there has been a public disclosure as in this situation.

Additionally, Relator's allegations utterly fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). The Complaint fails to identify the who, what, where, when, and how of the alleged fraud, as required for Relator's claims. Rather, Relator simply engages in a formulaic recitation of the elements of a FCA claim. More specifically, Relator does not allege which individual made a purportedly false statement or how or to whom such statement was made. Relator does not identify on which document, if any, the alleged false statements were made. Relator has not pointed to a single misrepresentation or incorrect information in the Club's applications, other than Relator's alleged legal conclusion that the Club falsely certified its eligibility "knowingly." In fact, Relator does not provide even a scrap of information regarding the Club's knowledge as to its eligibility for the loan.

As a result, the Complaint fails to allege scienter adequately, a prerequisite under the FCA. Instead, the Complaint asserts a legal conclusion with its formulaic and generalized allegation that Defendants did "knowingly make" a false statement. Relator even fails to allege how Club's knowledge plausibly met the definition for "knowingly" required by the FCA. There are no allegations that plausibly suggest any claim was made with "actual knowledge," "in deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." See 31 U.S.C. § 3729(b)(1)(A).

Nowhere in the Complaint does Relator allege facts to show that any specific individual knowingly provided false information to obtain a PPP loan. Quite the contrary, Relator indicates that a John or Jane Doe knowingly provided false information.

For these and the reasons set forth below, and also because the FCA *qui tam* provision is unconstitutional under Article II of the United States Constitution,[2] the Complaint should be dismissed in its entirety with prejudice without leave to amend.

## II.   <u>FACTUAL BACKGROUND</u>

The Club is a non-profit corporation formed for the purpose of promoting tennis, swimming, fitness and other recreational activities in a family type atmosphere. The

---

[2] See *U.S. ex rel. Polansky v. Executive Health Resources*, 599 U.S. 419, 448–52 (2023) (Thomas, dissenting, stating that "[t]he FCA's *qui tam* provisions have long inhabited something of a constitutional twilight zone. There are substantial arguments that the *qui tam* device is inconsistent with Article II and that private relators may not represent the interests of the United States in litigation.") (Barrett and Kavanaugh concurring and agreeing with Thomas, noting that the Supreme Court "should consider the competing arguments on the Article II issue in an appropriate case"). The complaint should be dismissed on the other grounds set forth herein; however, this argument is included to preserve its application on appeal.

Club has served East Tennessee since opening its doors in 1961. It offers a wide variety of programs, memberships, and lessons. *See* Knoxville Racquet Club, https://knoxvilleracquetclub.com/ (last visited May 13, 2026).

Upon information and belief, Relator, a serial plaintiff,[3] is a limited liability company, located in the state of Virginia. Relator recently filed lawsuits against numerous entities alleging violations of the FCA in connection with COVID-19 relief programs and noncompliance with the Paycheck Protection Program ("PPP") administered by the U.S. Small Business Association ("SBA"). Relator has not alleged any connection or inside knowledge regarding the Club.

In the Complaint, Relator alleges that the Club violated the FCA by "knowingly" submitting a false claim by certifying that it was eligible for a PPP loan.

### III.    <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[3] A nationwide "party search" on PACER reflects that the Tarbell Group, LLC, has filed FCA actions as a relator in cases around the country. *See, e.g., U.S. ex rel. The Tarbell Group, LLC v. Acoaxet Club Inc., et al*, Case No. 1:24-cv-11950-LTS, D. Mass (filed Jul. 26, 2024) (alleging similar FCA claims involving PPP loans against over 100 defendants); *U.S. ex rel. The Tarbell Group, LLC v. Mid-Eastern Athletic Conference, et al.*, Case No. 1:24-cv-00849-LMB-LRV, E. D. Va. (filed May 21, 2024) (alleging similar FCA claims involving PPP loans against multiple defendants); and *U.S. ex rel. The Tarbell Group, LLC v. Simbeck, Inc.*, Case No. 5:24-cv-00046-EDK-JCH, W.D. Va. (filed Jun. 28, 2024) (alleging similar FCA violations involving PPP loans).

(2007)). "A pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* In considering a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (internal quotations omitted).

"The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action, they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Iqbal*, 556 U.S. at 678). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Courts "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." [4] *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Addition ally, pursuant to Federal Rule of Evidence 201, the Court may

---

[4] The documents contained in Exhibits A and B are worthy of judicial notice, as the documents derive purely from government websites and ProPublica, a news media website.

take judicial notice of information derived from publicly available online sources on a government websites. *Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites."). The Court may also take judicial notice of news media articles, provided they are not used for the truth of the matter asserted. *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 662 (6th Cir. 2005) ("We take judicial notice of the fact that the media articles cited above were published, without reaching any conclusions about their truth." (citing Fed. R. Evid. 201). For purposes of the public doctrine bar, it is sufficient to note that the articles cited were published without considering the truth of their contents. Although courts must generally accept allegations in a complaint as true when analyzing a motion to dismiss, the court does not have to accept as true unwarranted factual inferences. *Elec. Merch. Sys. LLC v. Gaal*, 58 F. 4th 877, 882 (6th Cir. 2023).

In addition to meeting the plausibility standard of *Iqbal*, Relator's FCA claims are subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) and must be pleaded with particularity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) ("[C]omplaints brought under the FCA must fulfill the requirements of Rule 9(b)—defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.") (internal citation omitted). "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the

fraud.'" *Id.* (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–162 (6th Cir.1993)). "At a minimum, Rule 9(b) requires that the plaintiff specify the what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation modified). Accordingly, "[t]he failure to identify specific parties, contracts, or fraudulent acts requires dismissal." *Yuhasz*, 341 F.3d at 563.

## IV.    ARGUMENT

### A.  Relator's Claims are Barred by the FCA's Public Disclosure Bar

The Complaint should be dismissed with prejudice because Relator has not alleged facts to overcome the FCA's public disclosure bar. In light of prior, public disclosures, Relator's failure and inability to allege facts to show it is an "original source" is fatal to the Complaint, and so it must be dismissed.

"To guard against potential 'parasitic lawsuits' and 'opportunistic plaintiffs,' Congress included a public-disclosure bar in the FCA." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 521–22 (6th Cir. 2020) (internal citation omitted); *see also U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 335 (6th Cir. 1998) (noting Congress structured the FCA's *qui tam* provisions in such a way "to block freeloading relators"). The FCA public disclosure bar disqualifies private suits based on fraud already disclosed through particular channels—such as, government hearings, government reports, or from the news media—unless the relator is the original source of the information. 31 U.S.C. § 3730(e)(4)(A). Specifically, the statute states:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations

or transactions as alleged in the action or claim were publicly disclosed—

      (i)     in a Federal criminal, civil, or administrative hearing in which the

      Government or its agent is a party;

      (ii)     in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

      (iii)     from the news media,

      unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

      (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A)-(B).

This "provision 'bars *qui tam* actions that merely feed off prior public disclosures of fraud.'" *Hage-Korban*, 981 F.3d at 522 (quoting *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020)). Courts "employ a three-step analysis to decide whether this public-disclosure bar applies." *Hage-Korban*, 981 F.3d at 522. First, a court determines "whether, before the filing of the *qui tam* complaint, there had been any public disclosures from which fraud might be inferred." *Id.* (citing *Holloway*, 960 F.3d at 844). Second, a court determines "whether the allegations in the complaint are 'substantially the same' as those contained in the public disclosures." *Id.* And third, the Court determines "whether the *qui tam* plaintiff is nevertheless an 'original source of the information.'" *Id.*

The public disclosure bar is grounds for dismissal and serves as an affirmative defense. *United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 435 (6th Cir. 2016). It does not require actual knowledge by the relator of the public disclosure but instead applies "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). The relator bears the burden of proving that the public disclosure bar does not preclude its FCA action. *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823 (6th Cir. 2021). Under the public disclosure bar, "the court shall dismiss" a *qui tam* action if the publicly disclosed facts are substantially the same as Relator's allegations. 31 U.S.C. § 3730(e)(4)(A); *see also Rahimi*, 3 F.4th at 832 (affirming district courts dismissal of *qui tam* action upon finding the claim barred by the public bar doctrine).

1.    **The Complaint is Based Entirely on Public Information**

The information on which the complaint is based—the SBA.gov PPP loan spreadsheet— qualifies as a public disclosure because it constitutes a "federal report." The Sixth Circuit has noted that "[t]he sources of public disclosure in § 3730(e)(4)(A) … suggest that the public disclosure bar provides a broad sweep." *Hage-Korban*, 981 F.3d at 522 (citation modified). "Consistent with this generally broad scope, the Supreme Court has interpreted 'report' expansively to include something that gives information or a notification." *Id.* (citation modified).  "To decide whether a claim has been publicly disclosed, courts look at the essential elements of alleged fraud to determine if enough information exists in the public domain to expose the fraudulent transaction." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 (6th Cir. 2017). The

9

key inquiry is whether the disclosures could have "put[ ] the government on notice of the fraud alleged in the *qui tam* complaint." *Hage-Korban*, 981 F.3d at 523.

Every significant fact that Relator alleges in the Complaint is publicly available on SBA.gov, an official website of the United States Government. The searchable PPP loan spreadsheet on SBA.gov qualifies as a "report" for purposes of the public disclosure bar. In the SBA.gov PPP loan spreadsheet, a PPP loan is included for "KNOXVILLE RACQUET CLUB INC." That spreadsheet provides the following judicially noticeable information for PPP loans: (1) company name and address; (2) loan amount; (3) date loan was approved; (4) lender; (5) loan amount forgiven; (6) date loan amount forgiven; (7) number of jobs reported; (8) loan number; (9) business type; and (10) NAICS Code. This is precisely the factual information upon which the allegations in the Complaint are premised.

The SBA.gov PPP loan spreadsheet was publicly disclosed before Relator filed the Complaint in this case. *See* Exhibit A. The dataset was created and last updated on October 21, 2024. *Id.* The initial complaint was filed on April 2, 2025. [Doc. 1-6.]

Furthermore, ProPublica.org obviously qualifies as "news media" within the plain meaning of the term and makes the term readily accessible on a public website. *See U.S., ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013) ("[M]any court have held that information on readily accessible public websites constitutes public disclosure.). Information such as the amount of the loan and the forgiveness amount is also readily available on ProPublica. Exhibit B.

Given that all of the facts found in the Complaint came from qualifying publicly available information, the "same allegations or transactions as alleged" in the Complaint were publicly disclosed prior to the filing of the Complaint, the Complaint should be dismissed.

2.    **Relator is not an "Original Source" of the Public Disclosure**

Since there has been a public disclosure, the Court "shall dismiss [the] action," unless opposed by the Government, unless Relator is an original source of the information. 31 U.S.C. § 3730(e)(4)(A). A person is an "original source" if, prior to the public disclosure, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions, and voluntarily provided the information to the Government before filing an action. 31 U.S.C. § 3730(e)(4)(B); *see also Hage-Korban*, 981 F.3d at 526–27. Nowhere does Relator allege it satisfies the elements required to be an "original source."

Rather, the database was already publicly disclosed when Relator filed the Complaint in this case. *See* Exhibit A. Relator is not an original source of any of the information underlying its claims because Relator's knowledge is derived purely from this public information. Furthermore, Relator has not alleged anywhere in the Complaint either that it is an original source or that it provided information to the Government before filing suit. In its Complaint, Relator made no assertions of independent or original knowledge of the facts outlined in the Complaint. Accordingly, Relator is ineligible as an original source under either variant of the exception.

Under the first exception, a relator necessarily must have preexisting knowledge in order to provide it to the Government before the public disclosure. 31 U.S.C. § 3730(e)(4)(B)(i). Relator had no such knowledge, and the Complaint contains no facts indicating that such a disclosure occurred. Nor can Relator meet the second exception; the FCA requires "independent" knowledge, and Relator has none. 31 U.S.C. § 3730(e)(4)(B)(2). Relator cannot satisfy this requirement because it has not alleged that it has any knowledge beyond what has already been publicly disclosed. Relator also has not alleged that it provided any information to the Government before filing suit. Because Relator is not an original source, the claims in the Complaint are barred by the public disclosure bar.

**B. Relator's Complaint Fails to Sufficiently State a Claim**

**1. The Complaint Does Not Identify Any False Statements with 9(b) Particularity**

"At a minimum, Rule 9(b) requires that the plaintiff specify the ', what, when, where, and how of the alleged fraud." *Sanderson*, 447 F.3d at 877 (citation modified). The Sixth Circuit has articulated that

> the heightened pleading requirements of Rule 9(b) are met by a complaint that sets out:
>
> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the [government], and (4) what the defendants obtained as a consequence of the fraud.

*Id.* (internal citation omitted). The Sixth Circuit has affirmed dismissal where "[c]learly, what is alleged in the complaint before us is limited to speculation and unsupported conclusion." *Id.* at 878. Furthermore, "[t]he failure to identify specific parties, contracts, or fraudulent acts requires dismissal." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003).

Relator has wholly failed to provide the required information. Relator has not explained through what documents or oral representations any alleged statements were made. It has not alleged the place of any purported statement nor the person responsible for making the same. Quite the contrary, Relator has made it abundantly clear that it has no idea who made any such alleged statement by filing suit individually against "Unknown John or Jan Does . . . by and through whom Defendants respectively acted." [Doc. 1-6, PageID#: 75.] Nor has Relator alleged the manner in which any alleged statements misled the government. Such failures make Relator's Complaint wholly insufficient under the 9(b) particularity pleading standard and, thus, require dismissal.

### 2. The Complaint Does Not Allege Facts Supporting Scienter

The treble damages and penalties under the FCA are severe. Under the FCA, any person who knowingly violates the Act is liable for (1) a civil penalty of between $14,308 to $28,619 *per claim*; and (2) three times the amount of damages sustained by the Government. *See* 31 U.S.C. § 3729(a)(1).

While these penalties are severe, the FCA imposes civil liability ***only*** for "knowingly present[ing] . . . a false or fraudulent claim" to the government "for payment

13

or approval." *Id.* § 3729(a)-(b). The FCA defines "knowingly" to mean that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *See id.* § 3729(b)(1)(A).

Sister courts across the state have been clear that simple negligence and innocent mistakes do not rise to the level of scienter required by the FCA. *U.S. ex rel. Augustine v. Century Health Servs., Inc.*, 136 F. Supp. 2d 876, 888 (M.D. Tenn. 2000), *aff'd,* 289 F.3d 409 (6th Cir. 2002); *United States v. Est. of Rogers*, No. 1:97CV461, 2001 WL 818160, at *3 (E.D. Tenn. June 28, 2001). Rather, a relator must show that a defendant acted with "either actual knowledge, deliberate ignorance, or recklessness." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023).

The Supreme Court has articulated that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* at 749. To satisfy that burden, Relator must allege specific facts, supporting its allegation that the Club either knew or was aware of a substantial risk that its certifications about PPP loan eligibility submissions were false. *See Id.* at 751. Relator has not done so. The Complaint does not allege that Club knew that it was not eligible for a PPP loan nor does it allege that the Club knew of a substantial risk that it was not eligible and acted anyways. Additionally, Relator makes no allegation that the Government was unaware of facts material to the Club's PPP loan eligibility. Accordingly, Relator alleges no facts supporting the scienter requirement; therefore, the Complaint should be dismissed.

When allegations in a FCA complaint could equally support an inference of mistake or negligence rather than fraud, the complaint fails to meet Rule 9(b)'s particularity requirements. *See United States v. Omnicare, Inc.*, 903 F.3d 78, 92 (3d Cir. 2018). This Court can take judicial notice that when the Club received the PPP loan on April 16, 2020, it was at the beginning of the Covid-19 pandemic when panic and confusion reigned. In March 2020, Congress enacted the "Coronavirus Aid, Relief, and Economic Security Act" (CARES Act) that established the PPP loan program in response to the economic collapse caused by the COVID-19 global pandemic. Under extreme pressure to infuse liquidity into an economy in collapse as quickly as possible, the federal government enlisted the assistance of banks, credit unions, and loan processors to administrator the PPP loan program. *See U.S. ex rel. Collins v. Robertson*, No. 1:22-CV-02634, 2025 WL 2701061, at *1 (N.D. Ga. Aug. 18, 2025) ("The Paycheck Protection Program (PPP) provided for the Small Business Administration to guarantee loans that were processed, approved, and disbursed by private financial institutions."). Using banks, credit unions, and loan processors created additional confusion and less oversight than if the federal government had the time and resources to implement and oversee the PPP loan program.

Multiple district courts in the Sixth Circuit have described the urgency and confusion in the early PPP loan process. One such district court described the outset of the Paycheck Protection Program as follows:

> The first draw program was enacted as part of an urgent legislative attempt to cope with the devastating, unprecedented, and rapid economic decline that occurred when states around the nation slammed the brakes on normal economic output by drastically curtailing in-person work and personal movement for non-essential purposes. . . . It was both consistent and entirely economically and politically rational for Congress to believe, first, that the broadest possible allowance of credit was called for in the

opening weeks and months of the pandemic crisis, in order to keep as many citizens gainfully employed as possible.

*Nat'l Ass'n of Home Builders v. U.S. Small Bus. Admin.*, No. 20-11780, 2021 WL 4458660, at *11 (E.D. Mich. Sept. 28, 2021).

In short, the Complaint reveals an obvious alternative lawful explanation: At the beginning of the COVID-19 crisis and during the first weeks of the PPP loan program, the Club and its bank mistakenly believed that it was eligible for a PPP loan. This alternative explanation is supported by the fact that the Club became eligible for a PPP loan less than one year later, yet it applied for only one PPP loan. If the Club had any fraudulent intent, it would have applied for a second PPP loan. Because the Club became eligible to receive a PPP loan less than twelve (12) months after it received the loan, the United States suffered no damages. At most, the Complaint alleges that the Club received a PPP loan prematurely.

## <u>CONCLUSION</u>

For the forgoing reasons, the Club requests that the Court: (1) grant its Motion to Dismiss the Complaint in its entirety as to Knoxville Racquet Club Inc.; and (2) grant such other and further relief as deemed just and proper.

Respectfully submitted this 15th day of May, 2026.

**KRAMER RAYSON LLP**

By:   <u>s/ Edward G. Phillips</u>
Edward G. Phillips, (BPR No. 006147)
Bethany Westcott Wilson, (BPR No. 042199)
800 S. Gay Street, Suite 2500

16

Knoxville, TN  37929
Phone:  (865) 525-5134
ephillips@kramer-rayson.com
bwilson@kramer-rayson.com
*Counsel for Defendant,*
*Knoxville Racquet Club Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May, 2026, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

Bruce Ellis Fein
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, VA 22066
703-248-0390
bruce@newdream.net

s/ Edward G. Phillips
Edward G. Phillips