**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. THE TARBELL GROUP, LLC, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 1:25-cv-111-TRM-MJD |
| v. | ) ) | |
| Bristol TN-VA Association of Realtors, *et al.* | ) ) | |
| *Defendants*. | ) ) ) | |

## <u>DEFENDANT GREEN MEADOW COUNTRY CLUB, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)</u>

Comes now, Defendant Green Meadow Country Club, Inc. ("Green Meadow") and submits this Memorandum in Support of its Motion to Dismiss the claims of Relator The Tarbell Group, LLC's (the "Relator") against Green Meadow pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Green Meadow respectfully requests for the Court to dismiss the Relator's claims against Green Meadow in their entirety:

### I. PRELIMINARY STATEMENT

This lawsuit concerns an alleged *qui tam* claim arising under the False Claims Act (the "FCA") filed by the Relator against Green Meadow. Specifically, the Relator alleges that Green Meadow received a PPP loan by fraudulently certifying that it was eligible to receive such loan and have that loan forgiven. The facts alleged by the Relator, however, are all publicly available on Federal and news organization websites. The Relator's claims are therefore barred by the FCA's public-disclosure bar, and the Relator's claims against Green Meadow must be dismissed as a matter of law.

## II.    BACKGROUND

In 2020, during the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, amended by, *inter alia*, the Paycheck Protection Program Flexibility Act of 2020, Pub. L. 116-142, and the American Rescue Plan Act of 2021, Pub. L. 117-2 (the "PPP Program"). Pursuant to the PPP Program, the federal government extended private loans ("PPP Loans") to eligible recipients that were guaranteed, forgiven and reimbursed by the United States Small Business Administration ("SBA"). As a condition to receiving PPP Loans and, ultimately, forgiveness on those PPP Loans, each applicant was required to certify its eligibility under the PPP Program, which excluded, among others, tax-exempt 501(c)(7) organizations from eligibility until March 11, 2021.

The Complaint alleges that Green Meadow is a tax-exempt 501(c)(7) organization located in Alcoa, Tennessee (Compl. ¶ 15). The Complaint further alleges that Green Meadow applied for and received the following PPP Loan:

| Loan No. | Date Approved | Loan Amount | Forgiveness Date | Amount Forgiven |
|---|---|---|---|---|
| 5999157001 | 4/6/2020 | $141,000.00 | 4/5/2021 | $142,374.75 |

(*See* Compl. ¶ 36 and Exhibit A). In doing so, the Complaint alleges that Green Meadow presented a fraudulent claim for payment or approval by falsely certifying that it was eligible for a PPP Loan and the forgiveness thereof to the injury of the United States. (Compl. ¶¶ 39–41). While PPP Loan recipients could receive up to two loans, one in each of two tranches (a "draw"), the Complaint does not allege that Green Meadow received a second draw under the PPP Program. (*See* Compl. ¶ 43).

All the information alleged concerning Green Meadow, however, is publicly available on a website operated by the United States government, PandemicOversight.gov, as well as the news

website ProPublica.[1] With respect to PandemicOversight.gov, this website is managed by the Pandemic Response Accountability Committee of the Council of Inspectors General on Integrity and Efficiency, and it collects data from the United States Small Business Administration. As it relates to Green Meadow, PandemicOversight.gov provides Green Meadow's address, its industry, loan application number, lender, date the PPP loan was approved, loan amount, amount forgiven, number of loans, and jobs reported, among other things. Likewise, ProPublica provides a database of information related to PPP Loans and borrowers to the public. As it relates to Green Meadow, ProPublica provides Green Meadow's classification as a tax-exempt 501(c)(7) organization, its industry, loan application number, lender, date the PPP loan was approved, loan amount, amount forgiven, number of loans, and jobs reported, among other things.

On or about April 2, 2025, the Relator commenced this action by filing its Complaint under seal. In its Complaint, the Relator asserted a claim arising under the FCA against twenty-one (21) separate entities, alleging that each entity fraudulently received one or more PPP Loans. For three of those entities, Etowah Chamber of Commerce, Home Builders Association of Greater Knoxville, Inc., and Homebuilders Association of Greater Chattanooga, the Relator asserted a second claim arising under the FCA based on a second draw on their PPP Loans. On January 7, 2026, the United States filed its Notice of Election to Decline Intervention, and the case was subsequently unsealed. Green Meadow now moves to dismiss the Relator's claim pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure based on the public-disclosure bar of the False Claims Act.

---

1. Contemporaneous with the filing of this Motion to Dismiss, Green Meadow has filed its Request for Judicial Notice pursuant to Rule 201 of the Federal Rules of Evidence, requesting that the Court take judicial notice of the information reported on the PandemicOversight.gov and ProPublica websites.

### III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must set forth specific factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). To meet this standard, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court may accept factual allegations as true, this assumption of veracity does not extend to legal conclusions, including those couched as factual allegations. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Even under Rule 12(b)(6)'s liberal standard, a complaint "that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Tech. Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (italics in original). A court may consider not only the complaint itself, but also documents referenced in or attached to it, and matters subject to judicial notice. *See Bassett v. Nat'l Collegiate Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 875–77 (E.D. Tenn. 2005).

### IV. ARGUMENT

The False Claims Act "prohibits submitting false or fraudulent claims for payment to the United States . . . and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name[.]" *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011) (internal citations omitted). The FCA encourages relators "to act as private attorneys-general in bringing suits for the common good," providing financial incentives to those who do. *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009) (internal quotation omitted). However, "[t]o guard against potential 'parasitic lawsuits' and 'opportunistic plaintiffs,' Congress included a public-disclosure bar in the FCA." *United States ex rel. Maur v. Hage-*

*Korban*, 981 F.3d 516, 521–22 (6th Cir. 2020) (quoting *Poteet*, 552 F.3d at 507). This public-disclosure exclusion "bars *qui tam* actions that merely feed off prior public disclosures of fraud." *Id.* at 522 (quoting *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020)). The public-disclosure bar is "wide-reaching," but permits "suits that rest on genuinely new and material information." *Id.*

The FCA's public-disclosure bar directs that:

> The court shall dismiss an action or claim under [the FCA], unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the ... person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

District Courts in the Sixth Circuit apply a three-part test to determine whether the public-disclosure bar applies: "First, we ask whether, before the filing of the *qui tam* complaint, there had been any public disclosures from which fraud might be inferred . . . . Second, we assess how closely related the allegations in the complaint are to those in the public disclosures . . . . And third, we ask whether the *qui tam* plaintiff is nevertheless an original source of the information." *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823 (6th Cir. 2021) (internal citations and quotations omitted). Here, each of these elements is satisfied.

**A.      The Alleged Fraud Was Publicly Disclosed.**

It is well established that a disclosure is public "if it appears in 'the news media' or is made 'in a criminal, civil, or administrative hearing, [or] in a congressional, administrative, or Government Accounting Office report, audit, or investigation.'" *Id.* (quoting *Poteet*, 552 F.3d at 512). The disclosure does not need to use the word "fraud," rather, it merely needs to "disclose information which creates 'an inference of impropriety." *See id.* Here, there are at least two public disclosures that include all the information that is alleged in the Complaint: (i) the PandemicOversight.gov records and (ii) the Propublica records.

*i.      The PandemicOversight.gov Record*

When considering whether a record qualifies as a "Federal report" pursuant to 31 U.S.C. § 3730(e)(4)(A), courts have applied a broad scope, with the Supreme Court interpreting "'report' expansively to include 'something that gives information' or a 'notification.'" *See Maur*, 981 F.3d at 522 (citing *Schindler Elevator*, 563 U.S. at 408). Here, PandemicOversight.gov is an official website of the United States government, maintained and curated by the Pandemic Response Accountability Committee of the Council of Inspectors General on Integrity and Efficiency. Through this website, the general public can freely search for all entities who have received PPP Loans and receive detailed information about such loans, including the borrower's name, location, business type, industry, business age, lender, date the PPP loan was approved, loan amount, spending category, amount forgiven, number of loans, and jobs reported, among other things.

Applying *Schindler*'s broad definition of "report," the information provided by PandemicOversight.gov undoubtedly qualifies as a "Federal report" within the meaning of the public disclosure bar set forth in § 3730(e)(4)(A). *See United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-CV-00924-TLN-CDB, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024)

(holding that information available on PandemicOversight.gov qualifies as a Federal report for the purposes of the FCA public-disclosure bar); *United States ex rel. Relator LLC v. Sunshine*, No. 8:23-CV-00134-JVS-ADS, 2025 WL 2428470, at \*4 (C.D. Cal. June 30, 2025) ("PandemicOversight.gov constitutes a 'Federal report' within the meaning of the FCA"); *United States ex rel. Relator LLC v. Kellog*, 2025 WL 897439, at \*3 (S.D. Cal. Mar. 24, 2025) (same).

          *ii.      The ProPublica Record*

In additional to Federal records, the FCA's public-disclosure bar includes information that is publicly disclosed by the "news media," with such term generally construed to encompass a broad swath of publicly available information. Here, all of the information alleged in the Complaint with respect to Green Meadow has been published by ProPublica, including Green Meadow's classification as a tax-exempt 501(c)(7) organization, its industry, loan application number, lender, date the PPP loan was approved, loan amount, amount forgiven, number of loans, and jobs reported, among other things.

Further, ProPublica is a well-established news organization, whose work qualifies as "news media" under the FCA. With respect to PPP Loans, ProPublica has curated a publicly available database tracking all approved PPP loans and providing information about the businesses receiving such loans, with this database having been held to fall under the FCA's new media category. *See Sunshine*, 2025 WL 2428470, at \*4 (finding that "ProPublica is a well-established news source that has curated a publicly available database tracking all approved PPP loans and providing information about the businesses receiving such loans," and holding that ProPublica "qualifies as 'news media'" under the FCA's public-disclosure bar).

**B.** **The Allegations in the Complaint are Substantially Similar to the Public Disclosure.**

The second step in the analysis is to determine whether the public disclosure "is sufficient to put the government on notice of the likelihood of related fraudulent activity." *Rahimi*, 3 F.4th at 823; *see also Maur*, 981 F.3d at 523 ("The key inquiry is whether the disclosures could have 'put [] the government on notice of the fraud alleged in the *qui tam* complaint.'" (quoting *Holloway*, 960 F.3d at 851)). "To decide whether a claim has been publicly disclosed, courts look at the essential elements of the alleged fraud to determine if enough information exists in the public domain to expose the fraudulent transaction." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 (6th Cir. 2017). "To decide whether the government is already on notice of the fraud alleged, we ask whether the relator 'merely 'adds details' to what is already known in outline'" *Holloway*, 960 F.3d at 848.

Here, however, the analysis is simple: every element of the Relator's claim can be found in the public records. The Relator's claim is based on Green Meadow's purported ineligibility to obtain a PPP Loan due to its status as a tax-exempt 501(c)(7) organization. Green Meadow's tax-exempt status, along with the relevant dates and amount of its PPP loan, are the only facts the Relator relies on to state its FCA claim. Because all this information is in the public record, the Relator's claim is barred by the public-disclosure doctrine. *See Maur*, 981 F.3d at 526 (finding that the "exact scheme" alleged has already been publicly disclosed, and consequently, "[t]he 'wide-reaching public disclosure bar' therefore forecloses [the relator]'s *qui tam* suit unless he qualifies as an 'original source'").

**C.** **The Relator is Not an Original Source.**

Where substantially the same allegations as alleged in the Complaint have been publicly disclosed, the Relator can nonetheless circumvent the public-disclosure bar if it is an "original

source" of the information. *See* 31 U.S.C. § 3730(e)(4)(A). An "original source" is defined as an individual who either (i) "prior to a public disclosure under subsection (e)(4)(A) has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based," or (ii) "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action." *3*1 U.S.C. § 3730(e)(4)(B).

Here, the Relator cannot satisfy either of these definitions. Indeed, all the information alleged in the Complaint concerning Green Meadow was derived from the loan documents that were filed with the SBA, and PandemicOveright.gov expressly states that its information is drawn from the SBA records. Moreover, the Relator has not alleged any facts in the Complaint that add to, or are independent from, the publicly disclosed information, and the Relator cannot show that it voluntarily provided any information with respect to Green Meadows to the Government before filing its action.

Because the Relator cannot meet its burden of establishing that it qualifies as an original source under the FCA, the public-disclosure bar prohibits it from asserting its FCA claims against Green Meadow, and its Complaint against Green Meadow must be dismissed as a matter of law. *See Maur*, 981 F.3d at 529 (finding that the relator "has proffered no new information that materially adds to what is already contained in public disclosures. He does not qualify as an original source. And he cannot overcome the public-disclosure bar"); *see also Kootstra*, 2024 WL 3666470, at *5 (dismissing the relator's FCA claim that the defendant fraudulent obtained a PPP loan where its "allegations appear to be based entirely on public information," and the relator "does not cite—nor can the [c]ourt locate—any information in the [c]omplaint that materially adds to the public disclosures or shows that [r]elator had any independent knowledge of the alleged fraud");

*Sunshine*, 2025 WL 2428470, at *6 (holding that the relator's FCA claim that the defendant fraudulent obtained a PPP loan was precluded by the public-dislosure bar "[b]ecause there is qualifying public disclosure, the case must be dismissed unless 'the person bringing the action is an original source of the information,'" the "[r]elator does not contend that it is the original source of the information," and the "[r]elator does not cite to or provide the Court with any non-public information to show that it had independent knowledge of the alleged fraud").

## V.     CONCLUSION

For all the reasons set forth above, the Relator's claim against Green Meadow is barred by the public-disclosure bar, as set forth in 31 U.S.C. § 3730(e)(4)(A). Consequently, Green Meadow respectfully requests that its Motion to Dismiss be granted and all the Relator's claims against Green Meadow be dismissed.

Respectfully submitted this the 20th day of May, 2026.

> */s/ Lindsey L. Hobbs*
> Lindsey L. Hobbs (BPR #033703 )
> John P. Taylor (BPR #039397)
> HODGES, DOUGHTY & CARSON, PLLC
> 445 S. Gay Street, Suite 400
> Knoxville, Tennessee 37902
> Tel: (865) 292-2307
> Fax: (865) 292-2321
> Email: lhobbs@hdclaw.com
>             jtaylor@hdclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, which sends notifications to such filings to all registered participants.  All other parties will be served via regular U.S. mail.  Parties may access this filing through the Court's electronic filing system.

> */s/ Lindsey L. Hobbs*
> Lindsey L. Hobbs