IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. The Tarbell Group, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:25-CV-111-TRM-MJD |
| v. | ) ) | |
| BRISTOL TN-VA ASSOCIATION OF REALTORS, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT HOME BUILDERS ASSOCIATION OF GREATER CHATTANOOGA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

In this case, The Tarbell Group, LLC ("the Tarbell Group") brought a False Claims Act ("FCA") Complaint against twenty-two unrelated defendants, based entirely on publicly available loan-and-tax information, and devoid of specific facts. The government investigated and declined to intervene. Nonetheless, the Tarbell Group proceeded with litigation, just as it has with at least seventeen other boilerplate complaints filed across the country. This Motion to Dismiss is brought by Home Builders Association of Greater Chattanooga, Inc. ("HBAGC"). Before the Court is whether this complaint can survive the FCA's public-disclosure bar and the applicable federal pleading requirements. The FCA's public-disclosure bar precludes actions based on publicly disclosed information; Rules 8(a) and 12(b)(6) require sufficient facts to plead a plausible claim; and Rule 9(b) demands particularized fraud allegations. The complaint fails on all three grounds. Accordingly, the Court should grant this Motion and dismiss the Complaint with prejudice.

1

### A. BACKGROUND

#### i. The Paycheck Protection Program

In response to the COVID-19 pandemic in 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136. The CARES Act instructed the Small Business Administration ("SBA") to implement a program to guarantee, forgive, and reimburse private loans made to certain organizations by private lenders. *Id*. That program—the Paycheck Protection Program ("PPP")—took effect in March 2020 and thereafter was amended several times, including to modify the eligibility criteria. Compl. ¶¶ 30-33.

#### ii. Publicly available information about PPP loans

The PPP was widely publicized, and several sources tracked and publicly disclosed information about PPP loans, including ProPublica.org, an investigative news site with a subpage entitled "Tracking PPP," available at https://projects.propublica.org/coronavirus/bailouts/ (last visited June 12, 2026). The website contains easily accessible public information about every PPP loan issued, including, as pertinent here, the loans obtained by HBAGC.

### B. PARTIES

#### i. Home Builders Association of Greater Chattanooga, Inc.

HBAGC is a 501(c)(6) entity located in Chattanooga, Tennessee. At all relevant times, it operated as a non-profit tax-exempt organization under 26 U.S.C. § 501(c)(6). *Id*. In 2020, the HBAGC applied for a PPP loan. The SBA approved the HBAGC's loan on June 19, 2020, and the loan was forgiven on May 5, 2021. In 2021, the HBAGC applied for a second PPP loan. The SBA approved the HBAGC's loan on March 12, 2021, and the loan was forgiven on November 26, 2021.

### ii. The Tarbell Group, LLC

The Tarbell Group is a limited liability company organized and based in Virginia. Compl. ¶ 3. It has no connection to the Eastern District of Tennessee or to any defendant in this matter. *Id*. *passim*. Publicly available records indicate that the Tarbell Group was formed approximately two years ago on May 17, 2024[1] and has since brought at least seventeen separate FCA qui tam complaints nationwide, many premised on nearly identical allegations about PPP loan eligibility.[2]

### C. The Complaint's allegations and the government's declination to intervene.

On April 2, 2025, the Tarbell Group filed a sealed *qui tam* Complaint (the "Complaint") naming HBAGC and twenty-one other defendants. The Complaint generically alleges that all twenty-two defendants violated the FCA by falsely certifying their eligibility for PPP loans. Compl. ¶¶ 39-41. No individuals associated with any defendant are named. Instead, the Complaint relies on a blanket reference to "Unknown John or Jane Does," *Id.* ¶25, through which "[e]ach

---

[1] *See* Virginia State Corporation Clerk's Information System, Business Entity Search, available at https://cis.scc.virginia.gov/EntitySearch/Index (last visited June 12, 2026) (listing The Tarbell Group, LLC as formed on May 17, 2024). *See* attached Exhibit 1.

[2] *See, e.g., United States ex rel. Tarbell Group, LLC v. Dunlap Golf Club, Inc.*, No. 4:25-cv-00118, (S.D. Iowa Apr. 1, 2025) (alleging similar FCA claims involving PPP loans against 4 defendants); *United States ex rel. Tarbell Group, LLC v. Adams Cmty. Econ. Dev. Corp.*, No. 4:25-cv-00119, (S.D. Iowa Mar. 31, 2025) (same against 37 defendants); *United States ex rel. Tarbell Group, LLC v. Appaloosa Horse Club*, No. 3:25-cv-00145, (D. Idaho Mar. 14, 2025) (same against 21 defendants); *United States ex rel. Tarbell Group, LLC v. Acoaxet Club, Inc.*, No. 1:24-cv-11950, (D. Mass. July 26, 2024) (same against 120 defendants); *United States ex rel. Tarbell Group, LLC v. Bar-relville Outdoor Club*, No. 1:25-cv-00916, (D. Md. Mar. 19, 2025) (same against 6 defendants); *United States ex rel. Tarbell Group, LLC v. Am. Acad. of Envtl Eng'rs and Scientists Inc.*, No. 1:25-cv-00915, (D. Md. Mar. 19, 2025) (same against 69 defendants).

3

Case 1:25-cv-00111-TRM-MJD   Document 99   Filed 06/16/26   Page 3 of 14   PageID #: 649

institutional defendant. . . applied for and received one or more PPP Loans for which it was legally ineligible." *Id*. ¶ 34. The only other information alleged is (1) the defendants' addresses; (2) the code section under which defendants operated; and (3) a chart listing the defendants' PPP loan amounts, date approved, and forgiveness date. *Id*. ¶¶ 4-24, Exhibit 1.

After investigating for nine months, on January 7, 2026, the government declined to intervene. *See* Doc. No. 19. The Court later ordered that the Complaint be un-sealed. On April 3, 2026, the Tarbell Group served the Complaint on HBAGC. *See* Doc. No. 22.

## II. LEGAL STANDARDS

To survive a motion to dismiss, an FCA complaint must satisfy both the ordinary standards of Rules 12(b)(6) and 8(a), as well as the heightened pleading standards of Rule 9(b). *See United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502-03 (6th Cir. 2008).

### A. Rule 12(b)(6) and Rule 8(a)

Rule 12(b)(6) provides that a complaint must be dismissed if it "fails to state a claim upon which relief can be granted." While a court must "accept all well-pleaded factual allegations as true," *Solo v. United Parcel Servs. Co*., 819 F.3d 788, 793 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), it need not accept as true legal conclusions presented as factual allegations, *Iqbal*, 556 U.S. at 678-79. Similarly, under Rule 8(a), a complaint cannot survive a motion to dismiss if it relies on a "formulaic recitation of the elements" of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Further, as relevant here, a court should dismiss a complaint under Rule 12(b)(6) when the complaint's allegations affirmatively show that the claims are barred by the FCA's public-disclosure bar. *See United States v. Allstate Insurance Co*., 620 F. Supp. 3d 674, 684 (E.D.

Mich. 2022) (citing *United States ex rel. Advocs. for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 433 (6th Cir. 2016) (affirming dismissal based on the public-disclosure bar under Rule 12(b)(6))).

### B.    Rule 9(b)

Because FCA claims allege fraud, beyond meeting the standards above, they must also satisfy the heightened pleading requirements of Rule 9(b). *United States v. Walgreen Company*, 846 F.3d 879, 880-81 (6th Cir. 2017). To satisfy Rule 9(b), a plaintiff must "state with  particularity the circumstances constituting fraud or mistake." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011). "[A] plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

Further, in a multi-defendant case like this, the particularized allegations must be for each defendant. A complaint "may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 342 F.3d 634, 643 (6th Cir. 2003)(quoting Benoay v. Decker, 517 F.Supp. 490, 493 (E.D.Mich.1981) (internal quotation marks and citations omitted), aff'd, 735 F.2d 1363 (6th Cir.1984); *cf. United States v. Bornstein*, 423 U.S. 303, 313 (1976) (noting that the court must evaluate "the specific conduct of the person from whom the Government seeks to collect.").

### III. ARGUMENT

#### A. The Complaint is barred by the public-disclosure bar.

The FCA's public-disclosure bar "guard[s] against potential 'parasitic lawsuits' and 'opportunistic plaintiffs.'" *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 822 (6th Cir. 2021); *see also* 31 U.S.C. § 3730(e)(4)(A) (public-disclosure bar). That provision "bars *qui tam* actions that merely feed off prior public disclosures of fraud." *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020).

To determine whether the public-disclosure bar applies, the Sixth Circuit applies a three-part test. *Rahimi*, 3 F.4th at 823. Under this test, the court asks (1) whether there were "public disclosures from which fraud might be inferred" before the filing of the *qui tam* complaint; (2) "how closely related the allegations in the complaint are to those in the public disclosures"; and (3) "whether the *qui tam* plaintiff is nevertheless an original source of the information." *Id.* (citations omitted). Clearly, the Complaint fails under this analysis.

#### i. The Complaint is based entirely on public information.

A disclosure is public "if it appears in 'the news media' or is made 'in a criminal, civil, or administrative hearing, or in a congressional, administrative or Government Accounting Office report, audit, or investigation.'" *Rahimi*, 3 F.4th at 823 (citing *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009) (quoting § 3730(e)(4)(A))). The public disclosure need not explicitly allege fraud; it need only "put the government on notice to the possibility of fraud." *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004).

Here, HBAGC's PPP loans were publicly disclosed through the news media, and every fact that the Complaint alleges about those loans appeared on this site. (ProPublica.org). *See* 31

6

U.S.C. § 3730(e)(4)(A)(iii); *see also* attached collective Exhibit 2 (loan details from ProPublica.org).

The ProPublica.org site is "a public website" on which "anyone can learn the location of organization that applied for a loan, the organization's industry, the lender of the loan, the date the loan was approved, the loan amount, and the loan status." *United States ex rel. Seikel v. Alvarez*, No. 1:23-cv-01, 2024 WL 1315869, at *4 (N.D. W. Va. Mar. 27, 2024) (citing ProPublica.org's "Tracking PPP" subpage and granting motion to dismiss based on public-disclosure bar). And courts have regularly held ProPublica.org to be "news media" for purposes of the FCA's public-disclosure bar. *United States ex rel. Relator LLC v. Cardinalli*, No. 5:23-cv-00113, 2025 WL 4036760, at *3 (C.D. Cal. Sept. 25, 2025).

This site contains all the loan information alleged in the Complaint. For example, the ProPublica website reveals that on June 19, 2020, HBAGC was approved for a PPP loan in the amount of $46,300.00 and that a loan amount of $46,703.84 was forgiven on May 5, 2021. The ProPublica website reveals that the SBA approved the HBAGC s loan on March 12, 2021, and that a loan amount of $46,657.66 was later forgiven on November 26, 2021. The website also shows that HBAGC is a 501(c)(6). *See* attached collective Exhibit 2. Similarly, the relevant PPP rules and regulations and SBA guidance and forms, including the dates when § 501(c)(6) organizations became eligible for PPP loans, are publicly available on government websites. *See* attached collective Exhibit 2. *See also Cardinalli*, 2025 WL 4036760, at *4 (stating that "the SBA regulations governing PPP eligibility were themselves publicly available on SBA's website and published in the Federal Register" and dismissing case based on FCA's public-disclosure bar).

For the public-disclosure bar to apply, it does not matter if the publicly disclosed information comes from different sources. A public disclosure can "be piece-meal so long as the

7

multiple sources of information reveal the allegation of fraud and its essential elements." *Rahimi*, 3 F.4th at 824. In making this determination, "[c]ourts use the following formula to explain that concept: [I]f $X + Y = Z$, Z represents the allegation of fraud and X and Y represent its essential elements." *Holloway*, 960 F.3d at 844 (quoting *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 331 (6th Cir. 1998)). As the *Holloway* court held, "In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *Holloway*, 960 F.3d at 844 (quoting *Jones*, 160 F.3d at 331).

Applying this framework, "X" represents that HBAGC's § 501(c)(6) organization obtained PPP loans. "Y" represents SBA's rule that 501(c)(6) organizations were not eligible for PPP loans when HBAGC obtained its loans. Both X and Y are entirely based on public information, and those are the only variables that the Complaint relies on to allege "Z," that a fraud must have occurred.

### ii. The Complaint's allegations are substantially the same as those contained in public disclosures.

Courts next weigh "whether the allegations in the complaint are substantially the same as those contained in the public disclosure." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 522 (6th Cir. 2020) (quoting *Holloway*, 960 F.3d at 849.) Here, the allegations in the Complaint are substantially the same as those publicly disclosed—indeed, they are essentially identical—and the Complaint contains no additional relevant factual allegations. Specifically, the details of Defendant's PPP loans, including their organization type, loan number, date approved, loan amount, forgiveness date, and amount forgiven are all substantially the same as the publicly available information o n ProPublica.org. Likewise, the same PPP loan eligibility rules, including when § 501(c)(6) organizations became eligible for PPP loans, were publicly

8

available on the government websites sba.gov and federalregister.gov. *See* attached collective Exhibit 3.

Courts faced with similar allegations have concluded that the public-disclosure bar precludes the actions. For example, in *United States ex rel. Relator LLC v. Nations Direct Mortgage LLC*, the court dismissed the complaint, finding that the underlying information supporting Realtor's allegation was publicly disclosed on ProPublica.org." No. 2:22-cv-04784, 2026 WL 453464, at *4 (C.D. Cal. Jan. 5, 2026); *see also United States ex rel. Seikel v. Alvarez* No. 1:23-cv-01, 2024 WL 1315869, at *4 (N.D. W. Va. Mar. 27, 2024)(the court granted the defendants' motion to dismiss because the realtor relied on publicly available information, including information on ProbPublica.org.).

### iii. The Tarbell Group is not an original source.

Once there has been a public disclosure, the Court "shall dismiss [the] action" unless the relator is an original source of the information. 31 U.S.C. § 3730(e)(4)(A). A person is an "original source" if, before the public disclosure, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions. 31 U.S.C. § 3730(e)(4)(B).

The Tarbell Group is not an original source of any information underlying its claims. Indeed, it couldn't be: the Tarbell Group did not even *exist* until 2024—years after the loans at issue were applied for, forgiven, and disclosed publicly. Instead, the allegations are derived entirely from public information, and nothing in the Complaint suggests that the Tarbell Group—an out-of-state entity with no connection to any defendant—could have known and voluntarily disclosed such information. Nor can the Tarbell Group meet the second test. Nothing in the Complaint materially adds to the public disclosures or shows that the Tarbell

9

Group has any independent knowledge of the alleged fraud—or even how it could have such information. *See United States ex rel. CKD Project, LLC v. Fresenius Medical Care Holdings, Inc.,* 551 F. Supp. 3d 27, 45 (E.D.N.Y. 2021) ("[F]or new allegations to 'materially add' to public disclosures, they must 'substantially' or 'considerably' add to information that is already public.") (cleaned up).

In sum, the Tarbell Group is not an original source. Accordingly, the claims against HBAGC are barred by the public-disclosure bar and should be dismissed.

**B.       The Complaint fails to meet the pleading requirements of Rules 8(a) and 12(b)(6).**

Under Rule 8(a), a complaint cannot survive a motion to dismiss with only a "formulaic recitation of the elements" of a cause of action. *Twombly*, 550 U.S. at 555. But here, that is precisely what the Complaint does—formulaically recite the FCA statutory language without reference to any facts.

To plead an FCA claim, a plaintiff must sufficiently allege that: (1) the defendant made a false statement; (2) with scienter; (3) that was material; and (4) that the defendant submitted it to the government causing it to pay the claim. *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.,* 892 F.3d 822, 830 (6th Cir. 2018).

Here, the Complaint offers little more than a rote regurgitation of the statute. For example, though not citing the statute, Paragraph 39 attempts to allege a cause of action under § 3729(a)(1)(A). But it simply recites the statutory language of that section without any specific allegations regarding the individual defendant, the claim at issue, why or how the claim was false, why or how that claim was material, or any allegations to suggest scienter, and no information anywhere else in the Complaint cures these failings. Compl. ¶¶38-47.

**C.       The Complaint also fails to meet Rule 9(b)'s heightened pleading standard.**

10

Because the FCA is a fraud statute, Rule 9(b)'s heightened pleading standards apply independently. Under Rule 9(b), a plaintiff must allege sufficient details regarding the time, place, and content of the alleged false statements, the claim for payment made to the federal government, and the manner in which the false statements induced the government to make the claimed payment. *Ford Motor Co.*, 532 F.3d at 505. At the minimum, a complaint must "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). That heightened standard serves the dual purpose of providing a defendant with minimal details necessary to defend itself and discouraging "fishing expeditions which appear more likely to consume a defendant's resources than to reveal evidence of actual wrongdoing." *Ford Motor Co.*, 532 F.3d at 504 (citing *Bledsoe II*, 501 F.3d at 510).

The Complaint here offers no detail concerning the alleged statement made by Defendant. Although the Complaint references "falsely certifying" that it was eligible for a loan, *see* Compl. ¶¶39, 45, it provides nothing more: no details regarding this false certification, its content, why it was false, when it occurred, how it was material, or how it induced the government to make a payment.

Beyond only invoking a generic "false certification," the Complaint fails to plead the circumstances of any alleged misconduct as Rule 9(b) requires. Specifically, it lacks the "who, what, when, where, and how" of the alleged fraud. For example, the Complaint does not specify the date or even general time frame of when the HBAGC allegedly made false certifications. The chart attached to the Complaint lists three dates pertaining to actions taken by the government but not Defendant. *See* Compl. Ex. 1. It lists the date the *government* made 501(c)(6) organizations

11

eligible for PPP loans, the date the *government* approved the HBAGC loans, and the date that the *government* forgave the HBAGC loans. *Id*. But nothing in Ex. 1 or elsewhere in the Complaint alleges when HBAGC did anything. Nor does the Complaint identify any individuals from HBAGC or anyone who acted on their behalf—the "who" pertaining to the alleged falsity. Instead, the Complaint refers generally to "Defendants Unknown John or Jane Does" to encompass all "directors, officers, employees, or otherwise agents" of any of the 22 organizations listed in the Complaint. *Id*. ¶ 25. Such generalizations do not meet the regular pleading standards, much less the heightened standards under Rule 9(b).

These failings are fatal, as courts have repeatedly held. For example, in *Bledsoe*, the Sixth Circuit affirmed the dismissal of a relator's complaint alleging FCA violations for failure to set forth the dates of the various FCA violations and for making improper blanket references to defendants when describing fraudulent behavior, noting that a plaintiff pleading fraud "may not rely upon blanket references" to all defendants named in a complaint. 342 F.3d at 643. Instead, a complaint alleging fraud must apprise each defendant "of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Id*. (quoting *Benoay v. Decker*, 517 F. Supp. 490, 493 (E.D. Mich. 1981); *see also Jones v. Hood*, No. 2:24-cv-11164, 2025 WL 3091818, at *3 (E.D. Mich. Nov. 5, 2025) (noting that Rule 9(b) "prohibits plaintiffs from relying on 'group pleading'—that is, referring to [d]efendants collectively without specifying what each [d]efendant did.") (citations omitted).

Here, the Complaint relies entirely on blanket references. Instead of ascribing any specific conduct to HBAGC, or any of the other twenty-two defendants, the Complaint lumps all twenty-two of the defendants together in the First Cause of Action, generally alleging that "[d]efendants received approval for," and "[e]ach defendant did knowingly present." *see* Compl.

12

¶¶ 38-39. In the Second Cause of Action, the Complaint lumps three different defendants together, generically alleging "following defendants received second draw PPP loans for which they were ineligible" and "each of these defendants, and the individual defendants who acted on its behalf did knowingly present". *see* Compl. ¶¶ 43-45. Without pleading facts particular to acts taken by Defendants, the Complaint fails to satisfy Rule 9(b).

The Complaint presents the exact type of general allegations that Rule 9(b)'s heightened standard is designed to combat. Because such assertions cannot satisfy Rule 9(b)'s particularity requirement, the Complaint should be dismissed.

## IV.    CONCLUSION

The Tarbell Group's Complaint is the prototype of a parasitic lawsuit, based on public information, offering no facts or connection to the defendants, and shotgun-filed to extract a quick settlement. The government declined to intervene for good reason. HBAGC was eventually entitled to the loans it received from the government. No one profited from the loans. Now the Court should dismiss the Complaint against HBAGC. Congress added the FCA's public-disclosure bar to preclude exactly this kind of litigation, and the federal pleading standards provide further, independent bases for the Court to dismiss. For all the foregoing reasons, the Court should grant HBAGC 's Motion and dismiss the Complaint with prejudice.

13

Respectfully submitted,

GRANT, KONVALINKA & HARRISON, P.C.

By: __s/ David E. Harrison__
David E. Harrison (BPR # 006986)
By: __s/ Caroline Hood__
Caroline Hood  (BPR # 043413)
*Attorneys for Defendant Home Builders*
*Assoc. of Greater Chattanooga*
633 Chestnut Street, Suite 900
Chattanooga, TN 37450-0900
Telephone: (423) 756-8400
Fax: (423) 756-6518
dharrison@gkhpc.com
chood@gkhpc.com

14