UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* THE TARBELL GROUP, LLC, | |
| Plaintiff, | No.: 1:25-cv-00111-TRM-MJD |
| v. | CHIEF JUDGE MCDONOUGH |
| BRISTOL TN-VA ASSOCIATION OF REALTORS, *et al.*, | MAGISTRATE JUDGE DUMITRU |
| Defendants. | |

**Defendants' Consolidated\* Reply Brief in Support of Motions to Dismiss**

The Tarbell Group's Response in Opposition (DE 123) ("Response") to Defendants' motions to dismiss makes three categories of errors, each confirming that the complaint must be dismissed. First, regarding the public-disclosure bar, the Response ignores or misapplies the case law and facts that foreclose its arguments. Second, regarding the pleading deficiencies, the Response offers nothing to save the complaint from fatal shortcomings under Rules 9(b), 12(b)(6), and 8(a). And third, viewed as a whole, the Response presents mutually exclusive arguments that cannot both be logically, much less legally, true. Because the Response only reinforces the sound bases for dismissal, Defendants' motions to dismiss should be granted.

**I.      The public-disclosure bar requires dismissal.**

As Defendants explained, the False Claims Act's ("FCA") public-disclosure bar blocks "*qui tam* actions that merely feed off prior public disclosures of fraud." *See, e.g.*, DE 63 at PageID #403-04 (quoting *U.S. ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020)); *see also* 31 U.S.C. § 3730(e)(4)(A). In addressing the Sixth Circuit's three-part test, the Tarbell Group challenges only the second part, whether the complaint's allegations are

"substantially the same" as those public disclosures. Resp. at PageID #771. But those public disclosures plainly are substantially the same as the complaint's allegations. Relator's arguments cannot escape that basic fact nor save the complaint from dismissal.

**A.    The public disclosures put the government on notice of the fraud, which is all the FCA requires.**

The public-disclosure bar directs courts to dismiss an action "if substantially the same allegations or *transactions* as alleged in the action or claim were publicly disclosed." § 3730(e)(4)(A) (italics added). The transaction here is the loan transaction—who got it, when, how much, the borrower's status, etc.—all of which was publicly disclosed. The statute does not require that an actual fraud be publicly disclosed. Rather, "[a]ll that is required is that public disclosures put the government on notice to the possibility of fraud." *U.S. ex rel. Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004). That principle applies "even if the fraud is slightly different than the one alleged in the complaint." *Id*. *See also Holloway*, 960 F.3d at 848 ("[T]he entire point of *qui tam* actions is to prosecute fraud of which the government is unaware.") (internal marks omitted).

Relator's approach is inconsistent with the statutory text and precedent. Its argument would read "transaction" out of the statute and would have the public-disclosure bar only apply when the entire "fraud" was publicly disclosed—a result that would effectively nullify the public-disclosure bar in nearly every case since some element of fraud is almost always done privately. But that's not what is required: the point is whether the government is on notice by the public disclosures. *Holloway*, 960 F.3d at 848; *Dingle*, 388 F.3d at 214. The Sixth Circuit has been blunt on this point. When a relator argued the public-disclosure bar was inapplicable because no public disclosures of the specific type of fraud were made, the court replied: "[T]hat doesn't matter. To qualify as a public disclosure of fraud. . . the disclosure is not required to use the word fraud or provide a

specific allegation of fraud." *U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 432 (6th Cir. 2016). The same reasoning applies here.

Indeed, the Tarbell Group has done far less than relators in other cases where the Sixth Circuit applied the public-disclosure bar. To determine if the government is on notice of the fraud, the Sixth Circuit asks whether the relator "merely adds details to what is already known in outline." *Holloway*, 960 F.3d at 848 (citing *U.S. Bank,* 816 F.3d at 432). Relators cannot evade the public-disclosure bar by focusing allegations on "sub-classes of potential claims covered by the initial [disclosure]." *U.S. Bank*, 816 F.3d at 432. But here, relator has not even done that. The Tarbell Group adds *no* details, performs *no* analysis, and connects *no* dots. It simply regurgitates publicly available information—far short of what is required to avoid dismissal.

### B.     The non-public application is a red herring.

Relator refers to the alleged false certification of eligibility on the loan applications as the "gravamen of the case" and centers its entire argument around the applications being non-public. *See* Resp. at PageID # 767. But the application is a red herring for at least three reasons. First, even if relator had the applications, the public-disclosure bar would still apply here.[1] The application would merely be evidence confirming what was already known from the public disclosures—that a publicly registered tax-exempt organization obtained a PPP loan when that type of organization was not eligible. The applications add nothing to what the public sources already "disclosed in outline." *Holloway*, 960 F.3d at 848.

---

[1] The complaint alleges that each Defendant completed "loan application(s) at issue." The Response, however, goes beyond the allegations in the complaint and references specific application forms. Resp. at PageID #771. As an initial matter, relator cannot amend its complaint via its Response. *See infra* at 7 n.2.  But as discussed below, the forms themselves are public, and relator still alleges no non-public information about which form any Defendant used.

Second, relator's focus on the express false certification in a loan application misunderstands the FCA. Express false certification is a theory of liability under the FCA, of which there are many. But the public-disclosure bar focuses on *transactions*, not *theories of liability*. A colorable FCA claim can arise without such an express certification—e.g., via a theory of factual falsity or implied false certification. It is the misrepresentation itself, not the form in which it is made, that matters. The Supreme Court made this point in *Universal Health Serv., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016), noting that the FCA imposes liability on those who submit "false and fraudulent claims" without limiting "such claims to misrepresentations about express conditions of payment." *Id*. at 191. Either of those alternative theories could just as easily apply here, and neither requires an express certification. If relator's argument were right, it would create the anomalous result that the public-disclosure bar would apply differently depending on which theory a relator chose to plead, even if all theories rested on the same publicly disclosed transaction.

Third, relator argues that the false certification "appears in two places, and neither is public" and goes on to describe SBA Form 2483 and 2483-SD. Resp. at PageID #771. But as relator's description implies, those forms are and were publicly available. *See* Paycheck Protection Program Application, U.S. Dep't of the Treasury, https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Application-3-30-2020-v3.pdf (last visited July 13, 2026). The top of the application showed how an applicant would identify itself in a check box:

| | **Paycheck Protection Program**<br>**Borrower Application Form** | OMB Control No.: 3245-0407<br>Expiration Date: 09/30/2020 |
|---|---|---|
| **Check One:** | ❑ Sole proprietor ❑ Partnership ❑ C-Corp ❑ S-Corp ❑ LLC<br>❑ Independent contractor ❑ Eligible self-employed individual<br>❑ 501(c)(3) nonprofit ❑ 501(c)(19) veterans organization<br>❑ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ❑ Other | DBA or Tradename if Applicable |

And the bottom listed the precise certifications made in any application:

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____ The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____ Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____ The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____ The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____ I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____ During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____ I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_____ I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____          _____
Signature of Authorized Representative of Applicant          Date

As the form reveals, the gap between the public and non-public information is even narrower than Defendants' opening briefs suggested and further demonstrates the futility of relator's position. The public sources already supply everything needed to infer the fraud—the completed application, about which the relator makes (and can make) no allegation, would merely be proof.

### C.      Relator misapplies the X+Y=Z formula.

Relator next misapplies the X+Y=Z formula: the statute requires public disclosure of a misrepresented state of facts, not public disclosure of proof of it. X does not require a public document showing a defendant stating, "I am eligible." It requires only that public sources disclose something inconsistent with the truth — which they do here. *See Holloway*, 960 F.3d at 844; *Jones*, 160 F.3d at 331. An analogy illustrates why relator's reading cannot be right.

5

Assume that Company A, a government contractor, applies for and obtains a contract that is set aside exclusively for veteran-owned businesses. A public database shows that Company A received the contract. A separate public database shows that the company is not veteran owned. The actual application and any certifications on it are not public. But that application is not necessary for the "fraud" to be publicly disclosed. Indeed, if it were otherwise, the public-disclosure bar would never apply in such a case because the completed application is never public. More fundamentally, relator's argument misconstrues the entire point of the formula, which is to determine whether the fraud can be *inferred* from public disclosure. By contrast, relator's approach would require *explicit* public disclosure of the fraud itself, which would render the inferential framework superfluous. Nothing in the FCA text, Sixth Circuit precedent, or logic supports such an approach.

**D.** **Relator relies on one case, which undermines rather than supports its arguments, and ignores the many cases rejecting its exact theory.**

No case anywhere supports relator's position, and it cites none. Relator suggests a single case – *U.S. ex rel. Craig v. Hawthorne Machinery Co*. No. 20-cv-1625, 2024 WL 4294878 (S.D. Cal. Sep. 25, 2024) – rejected applying the public-disclosure bar under similar facts based entirely on public information. It did not. In *Craig*, the PPP loan eligibility turned on whether the defendant constituted a "small business," which was defined as one that averaged less than 500 employees over the prior year. *Id*. at *1. Unlike the relator here, the relator in *Craig*—a former employee of the defendant with insider information—alleged non-public information about the defendant's employee headcount that was not disclosed publicly. *Id*. at *13. While the *Craig* relator supplemented his complaint with public information, the non-public information necessary for the offense was provided by him. *Id*. By contrast, the Tarbell Group offers nothing to add to the public information.

Beyond misreading *Craig*, relator also ignores the many cases cited by Defendants in which courts found the public-disclosure bar precluded similar complaints related to PPP loans.

*See U.S. ex rel. Relator LLC v. Kootstra*, No. 1:22-cv-00924, 2024 WL 3666470, at *4 (E.D. Cal. Aug. 6, 2024) (defendant's status and loan receipt publicly disclosed; bar applied); *U.S. ex rel. Relator LLC v. Erskine,* No. 3:22-cv-1158, 2025 WL 796621, at *4-*6 (S.D. Cal. Feb. 25, 2025) (same); *U.S. ex rel. Akeel & Valentine, PLC v. Napleton Auto Group, Inc.*, No. 1:24- cv-00047, 2025 WL 2930796, at *7-*9 (N.D. Ill. Oct. 15, 2025) (same).

Relator does not attempt to distinguish these cases, which are factually nearly identical to this case and in which the courts applied the public-disclosure bar to dismiss the complaint. This Court should do the same.

## II.     The complaint falls well short of the pleading requirements.

Defendants' motions to dismiss pointed out the obvious: relator's complaint is a formulaic recitation of the FCA elements with few if any specific allegations about the defendants' supposed conduct. *See, e.g.*, DE 63 at PageID #410-13. In response, relator attempts to skirt the issue, point-ing to actions the *government* took—not *Defendants*. *See* Resp. at PageID #771[2]; *see also* Compl. Ex. 1. But Rule 9(b) requires details regarding alleged fraudulent acts themselves. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (stating a relator must allege the "who, what, when, where and how *of the alleged fraud*.") (emphasis added). The government's approval and forgiveness of the PPP loans provide no particularity as to the who, what, when, and how of any Defendant's alleged conduct.

---

[2] In sections III.C and D, the Response embellishes or adds details pertaining to scienter and the alleged certifications that do not appear in the complaint. *See* Resp. at Page ID 775-77. Such ref-erences should be disregarded because "it is black-letter law that, with a few . . . exceptions, a court evaluating a . . . motion to dismiss must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (cleaned up) (noting that plead-ings do not include plaintiffs' responses to a motion to dismiss); *U.S. ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-cv-204, 2023 WL 11987145, at *9 n.2 (E.D. Tenn. Aug. 22, 2023) (quoting same) (McDonough, J.).

Relator also fails to identify any specific individual who submitted an alleged false claim, relying instead on a blanket reference (John and Jane Does) for all unknown persons for all 22 defendants. While relator correctly notes that *Bledsoe* does not require naming individual employees, it omits that *Bledsoe* held that "naming specific employees of corporate defendant is *relevant* to whether plaintiff stated the circumstances of fraud with particularity." *Id*. at 508 (italics in original). More tellingly, relator omits that *Bledsoe* went on to affirm dismissal of the complaint, which the district court found did not "allege any specific claims, dates or employees." *Id*. at 515. *See also Coffey v. Foamex L.P*., 2 F.3d 157, 161–62 (6th Cir.1993) (affirming dismissal under Rule 9(b) where complaint lacked names, dates of alleged false statements, and other circumstances).

Ultimately, the Response reflects a misunderstanding of Rule 9(b). Relator boasts that the complaint "does more than provide representative examples" because it identifies the actual claims: the loan and forgiveness applications themselves. But the problem is not that Defendants would have difficulty identifying the applications at issue. This problem is that the complaint provides no details whatsoever as to what specific actions Defendants took that constitute fraud. The complaint does not describe what, when, how, or who at Defendants said or did anything (in making certifications on an application or in any other way). It just parrots the statute, attaches a chart, and says that is enough. But a chart of publicly available loan data does not constitute a colorable FCA complaint under any standard.

## III.    The Tarbell Group's arguments are mutually exclusive.

Relator's arguments regarding the public-disclosure bar and basic pleading requirements fail individually, but they also cannot coexist. Viewing those arguments together reveals that they both cannot be true logically, much less legally.

It is undisputed that the complaint contains entirely public information. The only dispute is how that information is characterized. To evade the public-disclosure bar, relator argues this

information is limited—it constitutes only "background facts" that "do not disclose the operative wrong: that each borrower falsely certified eligibility on its loan application." Resp. at PageID #772. As relator states, its claim is "built on a non-public PPP application." *Id*. at PageID #773.

But to evade the equally fatal pleading shortcomings, relator changes course. Now it contends that the information contained in the complaint—again, indisputably public information—is more than sufficient to plead fraud with particularity. Specifically, relator argues the complaint alone establishes that the individual Defendants "certif[ied] present eligibility at a time when the applicant's tax category was categorically excluded from the PPP." Resp. at PageID #772.

Relator's evasions are mutually exclusive. The publicly available information cannot simultaneously be both insufficient to infer fraud from (to avoid the public-disclosure bar) and sufficient to plead fraud with particularity (to avoid Rule 9(b)'s demanding pleading standard). The data either reveals the fraud or it doesn't. Relator can't have it both ways.

## IV. Conclusion.

Relator chides Defendants for "denigrating" the complaint as "parasitic." Resp. at PageID # 773. But the term "parasitic" is not denigrative, it's descriptive – and aptly so. *See* Merriam-Webster, available at, https://www.merriam-webster.com/dictionary/parasitic (accessed July 13, 2026) (defining parasitic, *inter alia*, as "depending on another or others for existence or support without making a useful or adequate return."). That is precisely what the Tarbell Group's complaint does: depend entirely on publicly disclosed information without making any addition or return. The FCA bars such complaints, which undermine the purpose of the *qui tam* provisions. The complaint also independently fails to satisfy Rules 8(a), 12(b)(6), and 9(b). For all those reasons, the complaint must be dismissed. And because the Tarbell Group has no non-public information and never did, amendment would be futile. Accordingly, the Court should dismiss the complaint with prejudice and decline relator's request for leave to amend.

Respectfully submitted,

Dated: July 14, 2026

/s/ *Frankie N. Spero*
Frankie N. Spero (No. 29408)
fspero@bradley.com
Ty E. Howard (No. 26132)
thoward@bradley.com
Hannah Grewal (No. 043089)
hgrewal@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
ONE 22 ONE, 1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582
*Counsel for Lakewood Golf and Country Club, RiverBend Country Club, Inc., and the Tullahoma Chamber of Commerce*

*For economy and convenience of the Court, certain defendants agreed to file a single consolidated reply. This consolidated reply is filed by Lakewood Golf and Country Club, RiverBend Country Club, Inc., and the Tullahoma Chamber of Commerce in support of their motion to dismiss (DE 62, 63) and joined by the following defendants in support of their individual motions to dismiss. As used in the reply, "Defendants" refers to all defendants that filed or joined the reply.

| Defendant | Defendant's motion to dismiss, memorandum of law |
| --- | --- |
| Fort Loudoun Yacht Club, Inc. | DE 52 |
| Knoxville Racquet Club | DE 70, 71 |
| Home Builders Association of Greater Knoxville, Inc. | DE 73 |
| Green Meadow Country Club, Inc. | DE 79, 80 |
| Knoxville Academy of Medicine | DE 83 |
| Oak Grove Cemetery Association | DE 87, 88 |
| Tennessee Valley Public Power Association, Inc. | DE 94, 95 |
| Homebuilders Association of Greater Chattanooga | DE 98, 99 |
| Signal Mountain Golf and Country Club | DE 101, 102 |
| Shelbyville Lodge No. 2197 Loyal Order of the Moose | DE 103, 104 |
| Greeneville Lodge No. 692 Loyal Order of the Moose | DE 105, 106 |