**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| United States of America ex rel. The Tarbell Group, LLC,<br><br>Plaintiff<br><br>v.<br><br>Bristol TN-VA Association of Realtors, et al.,<br><br>Defendants | Case no. 1:25-cv-111-TRM-MJD |

**RELATOR'S OPPOSITION TO MOTION TO DISMISS FILED BY DEFENDANT FRATERNAL ORDER OF POLICE VOLUNTEER LODGE NO. 2**

Plaintiff-Relator The Tarbell Group, LLC ("Relator") respectfully submits that the motion to dismiss (Doc. 128) filed by Defendant Fraternal Order of Police Volunteer Lodge No. 2 ("FOP") should be denied. FOP's one-page motion advances no argument particular to itself. Rather, it incorporates and relies on the other defendants' memoranda of law and consolidated reply brief to support two grounds for dismissal: the public-disclosure defense, and Federal Rule of Civil Procedure 9(b).

Relator's Consolidated Opposition to Fourteen Defendants' Motions to Dismiss ("Consolidated Opposition," Doc. 123) rebutted the defendants' opening memoranda of law. Accordingly, Relator incorporates by reference all arguments in the Consolidated opposition as though fully set forth herein. Consolidated Opposition, at 6-8 (addressing the public disclosure bar), 8-10 (addressing Rule 9(b)).

Because FOP relies also upon its co-defendants' consolidated reply brief ("Reply," Doc. 126), Relator below addresses the additional arguments therein insofar as they apply to the two defenses advanced by FOP, the public disclosure bar and Rule 9(b).

## A. The cases cited by the Reply do not supersede the statutory requirement that the misrepresented state of facts be publicly disclosed.

The Reply erroneously relies on two inapposite cases in arguing that public disclosures put the government on notice of their fraud, thereby triggering the public disclosure bar. Reply, at 2-3.

In *United States ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 432 (6th Cir. 2016), the defendant had earlier been accused of the allegedly fraudulent practice at issue (foreclosing on federally insured mortgages without observing the required loss-mitigation procedures) in enumerated public sources, viz., those identified in 31 U.S.C. § 3730(e)(4)(A), namely, a consent order with the United States, a federal foreclosure-practices review identifying the bank among those that failed to take loss-mitigation measures, and news coverage charging the bank with "a pattern of misconduct and negligence." 816 F.3d at 430-31. The misrepresented state of facts was in the public domain, from accusatory federal sources, before the relator sued. In this case, no enumerated source disclosed or accused any defendant of any misrepresentation.

*U.S. Bank* also cannot bear the weight the Reply places on it because the passages on which the Reply relies appear not in the court's holding that a qualifying public disclosure occurred, but in its later discussion of whether the relator qualified as the original source for those disclosures under 31 U.S.C. § 3730(e)(4)(B). 816 F.3d at 431-32. Relator here does not claim original-source status.

Similarly, in *United States ex rel. Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004), the prior allegations triggering the public disclosure bar had been made in a congressional report stating that the Food and Drug Administration had cited the defendant for deviations from its requirements, a public disclosure that is not present in this case.

The statements in *U.S. Bank* and *Dingle* that the public disclosures need only "put the government on notice of the possibility of fraud" cannot be taken literally. Thus construed, the bar would extinguish the qui tam institution, because the government always has notice of the possibility of fraud in any program whose disbursements it records. Every disbursement carries that possibility. So construed, the phrase would also delete the statute's operative words, that the bar applies when substantially the same allegations or transactions "were publicly disclosed," 31 U.S.C. § 3730(e)(4)(A), not whenever fraud might be surmised from public disclosures. Nor did *Dingle* pursue a literal reading. Having employed the phrase, the court took care to explain why the bar applied there: "both the X and the Y are present here (albeit in different sources), or at the very least, the Z is present with sufficient particularity." 388 F.3d at 215. "Notice of the possibility of fraud" describes the function the X + Y = Z framework serves. It does not displace the framework's requirement that both the misrepresented state of facts (X) and the true state of facts (Y) appear in enumerated public sources. *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512-13 & n.5 (6th Cir. 2009).

The Reply's alternative—that public disclosure of the loan "transaction" alone triggers the bar, Reply, at 2—proves too much. Virtually every federal disbursement is a matter of public record: every contract award, every Medicare payment, every SBA loan. If public disclosure of an innocuous transaction sufficed, no FCA suit concerning any publicly recorded government payment could ever proceed. The statutory word "transactions" refers to fraudulent transactions—those from which fraud may be inferred because both of their essential elements have been revealed—not to any transaction touching the claim. *Poteet*, 552 F.3d at 512-13.

### B. The blank application form discloses nothing about any defendant, and under any theory of liability the false claim resides in the submitted application, which is not public.

The Reply attaches significance to the public availability of blank SBA Form 2483. Reply, at 4-5. A blank form discloses what every applicant was asked to certify. It does not disclose what any defendant did certify, including any modifications or addenda defendants may have made. A misrepresentation requires a representation, and neither the public loan data nor the blank application forms contain a representation—true or false—by any borrower. The certification became a false statement only when a particular defendant made and initialed it, and that event is recorded in one place: the completed applications, which no enumerated source has disclosed.

The Reply's resort to *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), and to alternative theories of liability, is of no relevance. Reply, at 4. Whether under express certification, implied certification, or factual falsity, the false claim is the application submitted to SBA through the lender, a non-public document under every theory.

The veteran-contractor analogy, Reply, at 5-6, assumes the conclusion it is offered to prove: that receipt of government funds publicly discloses a representation by the recipient. It does not. Receipt discloses action by the government—and, in the PPP, by private lenders processing applications in volume and in haste. A loan to an ineligible entity is consistent with lender error, agent misconduct, or agency mistake, as well as with a false certification by the borrower. Only the application reveals who represented what. Nor would Relator's reading nullify the bar in such cases. The bar would still apply where a federal proceeding, audit, investigation, or news account alleged the fraud, which is the circumstance to which the public disclosure bar applies. The bar does not reach a case in which no enumerated source ever revealed a misrepresentation.

**C. The Reply's reformulation of X + Y = Z erases X.**

The Reply contends that X requires only public disclosure of "something inconsistent with the truth," not "a public document showing a defendant stating, 'I am eligible.'" Reply, at 5. But the formula the Sixth Circuit adopted in *Poteet* defines X as the misrepresented state of facts. 552 F.3d at 512-13 & n.5. The public loan data disclose Y alone—the true state of facts, that each defendant received a loan on a stated date and holds a stated tax classification. They disclose nothing "inconsistent with the truth" because they contain no representation at all by any defendant. The Reply's approach thus reduces the equation to Y = Z: from the true state of facts alone, infer fraud. That is not an application of the inferential framework but its abolition. The framework exists to identify when the fraudulent transaction has been publicly revealed. It does not excuse the absence of any public revelation of the misrepresentation.

**D. *Craig* supports Relator, and the out-of-circuit district decisions the Reply invokes are neither binding nor persuasive.**

The Reply describes the relator in *United States ex rel. Craig v. Hawthorne Machinery Co.*, No. 20-cv-1625, 2024 U.S. Dist. LEXIS 173872 (S.D. Cal. Sept. 25, 2024), as "a former employee of the defendant with insider information" who "alleged non-public information about the defendant's employee headcount that was not disclosed publicly." Reply, at 6. The opinion says otherwise. The employee-headcount discrepancy on which the court relied was drawn from the defendant's Form 5500—an annual report publicly filed with the Department of Labor that the court described as "a public document"—compared against the headcount stated on the PPP loan application, "a non-public document." 2024 U.S. Dist. LEXIS 173872, at *38. The opinion does not attribute the headcount allegations to insider knowledge. The defendant in *Craig* argued the reverse—that "the entirety of his fraud theory originated from publicly available governmental records and internet articles Relator sought out long after he had already been terminated." *Id.*, at

*32. What defeated the public-disclosure defense was the character of the claim: it depended on the defendant's "PPP loan application itself, which is non-public." *Id.*, at *37. That is Relator's posture here, in every relevant aspect.

The Reply's premise that Relator "adds no details, performs no analysis, and connects no dots," Reply, at 3, is likewise mistaken. The Complaint connects each loan's approval date to the statutory and regulatory timeline under which the borrower's tax class was categorically excluded from the PPP—an analysis found in no public source. Consolidated Opposition, at 8.

*Kootstra*, *Erskine*, and *Napleton Auto Group*, Reply, at 6-7, are district-court decisions from other circuits, decided under other circuits' formulations of the bar. To the extent they treated a borrower's publicly listed characteristics plus its receipt of a loan as public disclosure of the fraudulent transaction, they conflate the loan with the fraud, and cannot be reconciled with *Poteet*'s requirement that the misrepresented state of facts be publicly revealed. This Court must apply the Sixth Circuit framework.

Moreover, on July 15, 2026, the day after the Reply was filed, the Ninth Circuit reversed *Erskine*. *United States ex rel. Relator, LLC v. Erskine*, No. 25-2073, 2026 U.S. App. LEXIS 20754 (9th Cir. July 15, 2026). The court of appeals held the public-disclosure bar inapplicable because the district court had "impermissibly assessed" the relator's theory "at the highest level of generality." *Id.*, at *12. It further held that denying leave to amend after a single voluntary amendment was an abuse of discretion. *Id.*, at *19-21. The reversal answers the Reply's reliance on *Kootstra* as well. *Kootstra* was decided in the Eastern District of California, within the Ninth Circuit, on the theory *Erskine* now rejects: that a database entry recording a borrower's industry classification and receipt of a loan publicly discloses the fraudulent transaction. And *Kootstra*

dismissed with leave to amend, not with prejudice. *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-00924, 2024 U.S. Dist. LEXIS 139497, at *14-15 (E.D. Cal. Aug. 5, 2024).

*Napleton Auto Group*, a case from the Northern District of Illinois, involves facts unlike those in this case. The certification there was that no "Associate" of the applicant was under felony indictment, and the enumerated disclosures included news articles reporting that a principal of the Napleton dealerships was under felony indictment while serving as their director of operations. *United States ex rel. Akeel & Valentine, PLC v. Napleton Auto Group, Inc.*, 2025 U.S. Dist. LEXIS 203666, at *8. Prior accusatory news-media coverage of the *Napleton Auto Group* defendants supplied the misrepresented state of facts—the same feature that distinguishes *U.S. Bank*. No enumerated source has ever reported anything of the kind about FOP. The dismissal in *Napleton Auto Group*, too, was without prejudice, with leave to file a third amended complaint. 2025 U.S. Dist. LEXIS 203666, at *40.

*Craig* also bears on a contention advanced in several of the memoranda in which FOP joins: that SBA's forgiveness of the loans disproves materiality or scienter. The *Craig* court rejected that argument, because the complaint did not allege that SBA had "actual knowledge" of the borrower's violation when it forgave the loan, and because the allegations were "sufficient at this stage for the SBA's forgiveness of the loan to not be dispositive of materiality or scienter." 2024 U.S. Dist. LEXIS 173872, at *28-29. Forgiveness reflects the perpetrator's success, not the victim's informed acceptance. Consolidated Opposition, at 12.

**E. The Reply's Rule 9(b) arguments demand evidence, not particularity.**

The Reply's Rule 9(b) argument opens with a quotation that does not appear in the cited case. It attributes to *Bledsoe* the requirement that a relator plead "the who, what, when, where and how *of the alleged fraud*." Reply, at 7 (purporting to quote *United States ex rel. Bledsoe v. Cmty.*

*Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). *Bledsoe* does not contain such language. What *Bledsoe* requires, quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993), is that the complaint "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." 501 F.3d at 504. The Complaint alleges each: the certifications and their content, the dates fixed by the loan table, the scheme of obtaining and retaining funds from a program that excluded each defendant's tax class, scienter alleged generally as Rule 9(b) permits and consistently with the broad definition of knowledge under 31 U.S.C. § 3729(b)(1), the government's payment. This Court has stated the standard the same way, in an order the Reply cites: the relator must allege "the time, place, and content of the alleged misrepresentation," the fraudulent scheme, the fraudulent intent, and the resulting injury. *United States ex rel. Griffis v. EOD Technology, Inc.*, No. 3:10-cv-204, Doc. 177, at 21 (E.D. Tenn. Aug. 22, 2023) (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011)).

The Reply indicts the Complaint for "provid[ing] no details whatsoever as to what specific actions Defendants took." Reply, at 8. The details are pleaded. Each defendant's actionable act was the submission of the identified application—loan number, approval date, dollar amount, lender—certifying eligibility at a time when its tax class was categorically excluded, and again on the identified forgiveness application. Compl. ¶¶ 29-36, 39-41 & table. Submission of the certification is the false statement. There is no further "how" to narrate. Rule 9(b) requires notice of the circumstances of the fraud sufficient to permit the defendant to prepare a responsive pleading. *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-05 (6th Cir. 2008). It does not require Relator to plead the contents of the defendant's internal paperwork, which is evidence in the defendant's hands. This Court has enforced Rule 9(b) in the same vein.

In *United States ex rel. Adams v. Chattanooga-Hamilton County Hospital Authority*, No. 1:21-cv-84, 2024 U.S. Dist. LEXIS 10040 (E.D. Tenn. Jan. 19, 2024), the Court reiterated that Rule 9(b) "should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim,'" *id.*, at *13 (quoting *Snapp*, 532 F.3d at 503), and that "a plaintiff is not expected to actually prove his allegations" at the pleading stage. *Id.*, at *19-20 (quoting *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 838 F.3d 750, 771 (6th Cir. 2016)). "[S]o long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*, at *12-13 (quoting *Snapp*, 532 F.3d at 504). *Adams* sustained the FCA counts for which the relators identified representative claims and dismissed only the alleged schemes unmoored from any example of a particular claim. *Id.*, at *25-27. This Complaint identifies each claim.

*Bledsoe* defeats rather than assists the Reply. The Reply quotes *Bledsoe*'s observation that the naming of specific employees is "relevant to whether plaintiff stated the circumstances of fraud with particularity." Reply, at 8 (quoting *Bledsoe*, 501 F.3d at 508). It omits the balance of the sentence, which reads that the cited case "does not support the more radical proposition that this information is *necessary* for Rule 9(b) to be satisfied." *Bledsoe*, 501 F.3d at 508 (emphasis in original). *Bledsoe*'s holding renounces any such requirement: "a relator need not always allege the specific identity of the natural persons within the defendant corporation that submitted the false claims." *Id.*, at 509. Such identities are "merely relevant." *Id.* The court "decline[d] Defendants' invitation to engraft a new and formalistic pleading requirement onto the FCA." *Id.*, at 506. The identity of the officer or employee who signed each certification resides in the defendants' hands,

and Rule 9(b) does not require a relator to plead facts in the exclusive possession of its adversary. *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680-81 (6th Cir. 1988) (the particularity requirement "may be relaxed where information is only within the opposing party's knowledge," for "[w]e will not demand clairvoyance from pleaders"). "Corporate entities who jealously guard the names of their clients or other information, as they should, would be forever victorious in their motions to dismiss under Rule 9(b) if courts demanded the level of specificity at issue in this stage of a case. We are reluctant to punish the plaintiffs for their ignorance of a specific factual detail, as long as defendants have adequate notice of why they are being sued and are capable of preparing a responsive pleading." *Id.*, at 681. Discovery, not the pleading, is the instrument for extracting what the defendant alone possesses.

The Reply mischaracterizes the disposition in *Bledsoe*, asserting that it "went on to affirm dismissal of the complaint." Reply, at 8. *Bledsoe* did the opposite, reviving claims that had been dismissed below. 501 F.3d at 524 ("we reverse the district court's decision to dismiss Relator's entire complaint."). The court reversed as to the paragraphs that pleaded identified false claims and affirmed dismissal only of allegations lacking "any specific claims, dates, or employees." *Id.*, at 515. Here, every claim is identified by number, date, and amount.

Similarly, *Coffey*, a common-law fraud action, not an FCA case, upheld summary judgment, not 12(b)(6) dismissal, on the grounds that plaintiffs had not, in fact, relied on defendants' alleged misrepresentations because they knew them to be false, and because the claims were preempted by workman's compensation. 2 F.3d at 163. *Bledsoe* explained that the unnamed employees in *Coffey* constituted "merely one fact that was missing from a complaint that was deficient in multiple respects." 501 F.3d at 507-08.

**F. The Reply's charge that Relator introduced new matter is both mistaken and made with unclean hands.**

The Reply twice accuses Relator of amending the Complaint through its Response—by referencing the standard application forms, Reply, at 3 n.1, and by citing published SBA rules and guidance bearing on scienter, Reply, at 7 n.2. The accusation is mistaken. The Complaint pleads the certifications and that each defendant made them "knowingly," which Rule 9(b) permits to be "alleged generally." Compl. ¶¶ 29, 39-41, 45-47. The Response added no factual allegation. It identified the regulatory forms on which every PPP applicant certified and the published rules that a reasonable inquiry would have found—public regulatory materials of which the Court may take judicial notice. FOP and its co-defendants protest a reference to forms that the Reply insists are public. The provenance of the Reply's authority is telling. *Griffis*, the order the Reply cites for disregarding matter outside the pleadings, Reply, at 7 n.2, is an order of this Court denying a motion to dismiss pressed on Rule 9(b) grounds. *Griffis*, Doc. 177, at 21-24. And the matter the *Griffis* footnote excluded was an expert affidavit tendered by the movant—not a party's citation of public regulations subject to judicial notice. *Id.*, at 18 n.2.

The Reply itself introduces new matter. It embeds images of an application form retrieved from the Treasury Department's website, and quotes a dictionary definition of "parasitic." Reply, at 4-5, 9. The practice did not begin with the Reply. The opening memoranda came accompanied by matter outside the pleadings: screenshots and printouts from ProPublica (a news organization), PandemicOversight.gov, SBA.gov, and IRS records, tendered as exhibits, often with requests for judicial notice. See, e.g., Docs. 52, 63, 71, 80, 88, 95, 99, 102. Relator does not begrudge defendants their public records. It asks only the same dispensation for the published SBA rules and standard application forms it cited, which are not only public but of an official character.

**G. Relator's positions are complementary, not "mutually exclusive."**

The Reply's charge of self-contradiction, Reply, at 8-9, rests on a false dichotomy: "The data either reveals the fraud or it doesn't." The public-disclosure bar and Rule 9(b) ask different questions of different materials. The bar asks what the enumerated public sources disclosed before suit. Rule 9(b) asks whether the Complaint's allegations, taken as true, outline the fraud with sufficient particularity to give the defendants notice of what they must defend against. There is no inconsistency in observing that no public source disclosed a misrepresentation while alleging one in a complaint.

In any event, even were the positions inconsistent, inconsistency does not afford a ground for dismissal. The Federal Rules expressly permit a party to plead alternative and inconsistent positions. Fed. R. Civ. P. 8(d)(2), (3).

**H. Dismissal is not warranted, but if dismissal there be, it should be without prejudice, with leave to amend.**

The Reply closes by asking for dismissal with prejudice and denial of leave to amend on the ground that amendment would be futile. Reply, at 9. The request inverts the governing standard. Leave to amend is to be given "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), and futility means that the proposed amendment could not withstand a motion to dismiss—a showing defendants have not attempted beyond repeating their merits arguments. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The deficiencies defendants posit—additional particulars about each application and certification—are of the sort an amendment can supply. Should the Court find any pleading deficiency, dismissal should be without prejudice and with leave to amend. The Reply's chosen authorities agree. *Kootstra* and *Napleton Auto Group* each dismissed with leave to amend, and *Erskine* holds that denying leave to amend after a single voluntary amendment is an abuse of discretion. 2026 U.S. App. LEXIS 20754, at *19-21.

For the reasons stated in the Consolidated Opposition and above, FOP's motion should be denied.

FOP's motion also should be stricken or held in abeyance because it did not comply with the Court's Order Governing Motions to Dismiss, requiring a party filing a motion to dismiss to certify that counsel conferred and could not agree that the pleading was curable by a permissible amendment. FOP undertook no such conference.

Respectfully submitted,

/s/

Bruce Ellis Fein
Bruce Ellis Fein PLLC
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390
Attorney for Relator