UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| THE UNITED STATES OF AMERICA *ex rel.* THE TARBELL GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRISTOL TN-VA ASSOCIATION OF REALTORS, *et al.*,<br><br>Defendants. | No.: 1:25-cv-00111-TRM-MJD<br><br>CHIEF JUDGE MCDONOUGH<br>MAGISTRATE JUDGE DUMITRU |

**<u>Memorandum of Law in Support of Defendants' Joint Motion for Summary Judgment</u>**

On September 14, 2026, the Court denied defendants' motions to dismiss the False Claims Act ("FCA") complaint in this case involving Paycheck Protection Program ("PPP") loans. (DE 149.) But in doing so, the Court recognized that there was "a significant likelihood that the public-disclosure bar will apply at summary judgment." Accordingly, it ordered defendants to file an expedited joint summary-judgment motion solely on that ground. (*Id.* at PageID #884-85.)

The Court's prediction was correct—the undisputed facts establish that the public-disclosure bar applies and entitle all 16 undersigned defendants ("Defendants") to judgment as a matter of law. Those undisputed facts satisfy the three elements for the public-disclosure bar, including the specific aspects the Court identified as lacking in the motions to dismiss, that is, that Defendants' 501(c) classifications and participation in the PPP loan program were publicly available before Relator filed suit. (*See id.* at PageID #881.) In short, all the relevant information underlying the Complaint was publicly disclosed and available long before this case was filed (and indeed, long before Relator, the Tarbell Group, LLC, even *existed*). For all these reasons, the public-disclosure bar applies, and the Court should grant the motion for summary judgment.

## I. STANDARD OF REVIEW

Under Rule 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views all evidence in a light most favorable to the non-moving party, with the central inquiry being "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party can satisfy its burden by either "affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case." *Builders Mut. Ins. Co. v. GCC Constr., LLC*, 711 F. Supp. 3d 899, 915 (E.D. Tenn. 2024) (citation omitted) (McDonough, J.). Once the moving party has discharged its burden, "the nonmoving party can no longer rest upon the allegations in the pleadings," but rather, "must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial." *Id*. (citation omitted). "A mere scintilla of evidence is not enough; the [c]ourt must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record." *Ecolab Inc. v. Ridley*, No. 1:22-cv-50, 2024 WL 2708740, at *8 (E.D. Tenn. Mar. 12, 2024) (citations omitted) (McDonough, J.).

## II. ARGUMENT

"To guard against potential 'parasitic lawsuits' and 'opportunistic plaintiffs,' Congress included a public-disclosure bar in the FCA." *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 521-22 (6th Cir. 2020) (citation omitted); *see also* 31 U.S.C. § 3730(e)(4)(A). That provision bars *qui tam* actions "that merely feed off prior public disclosures of fraud," *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 843 (6th Cir. 2020), and blocks "plaintiffs who

have no significant information to contribute of their own," *United States ex rel. O'Connor v. USCC Wireless Invest., Inc.*, 128 4th 276, 281 (D.C. Cir. 2025) (citation omitted).

To determine whether the public-disclosure bar applies to a *qui tam* suit, courts in the Sixth Circuit apply a three-part test. *First*, a court asks whether, before the filing of the *qui tam* complaint, there had been any public disclosures from which fraud might be inferred. *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823 (6th Cir. 2021). A disclosure is considered public if it appears in "the news media" or is made "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation." § 3730(e)(4)(A). *Second*, a court assesses how closely related the allegations in the complaint are to those in the public disclosures. *Rahimi*, 3 F.4th at 823. *Third*, a court asks whether the *qui tam* plaintiff is nevertheless an original source of the information under § 3730(e)(4)(B). *Id*.

Here, the third element is uncontested, as Relator has stipulated that it is not an original source. *See* Joint Appendix ("JA") 1 (Stipulation ("Stip.") ¶ 3). As a result, Defendants focus on the first and second elements, which, as discussed below, have similarly been established by the undisputed facts.

### A. Long before the Complaint was filed, there were public disclosures from which the alleged fraud could be inferred.

In its Order, the Court summarized the necessary evidence to establish the first element: "fraud can be inferred if [before Relator filed its complaint] publicly available information shows that (1) a Defendant received a PPP loan, (2) the Defendant held a certain 501(c) status when it received the loan, and (3) organizations with the Defendant's 501(c) status were ineligible for PPP loans when the Defendant received the benefits." (DE 149 at PageID #881, n. 6.) The following sections address these three sub-elements in turn.

### 1. The Defendants' PPP loans and all relevant details about those loans were publicly disclosed by the SBA before the Complaint was filed.

The Court has already judicially noticed evidence from publicly available sources—namely, www.pandemicoversight.gov and www.propublica.org—establishing that Defendants received PPP loans and the relevant details for those loans. (*Id.* at PageID #880-82.) For certain Defendants, however, the Court found that there was insufficient evidence at the motion-to-dismiss stage to determine whether that loan information was available before the filing of this Complaint. (*Id.*) But the undisputed evidence now shows conclusively that Defendants' participation in the PPP program is—and has been—publicly available since well before Relator filed suit.

The data underlying ProPublica's PPP database, which has been relied on by Defendants here and defendants in similar cases, originates from the Small Business Administration's ("SBA") public release of all PPP participant data in 2021. *See* JA 3-5 (Declaration of J. Andrew Whitten ("Whitten Decl.") ¶¶ 3-11). The release was prompted by a Freedom of Information Act ("FOIA") lawsuit filed by ProPublica and other news organizations in May 2020. JA 5 (*Id.* ¶ 12). In response, on November 5, 2020, the D.C. Circuit ordered the SBA to release the names, addresses, and precise loan amounts for all PPP borrowers by November 19, 2020 (later extended to December 1, 2020). JA 5-6 (*Id.* ¶ 13).

The raw PPP data released by SBA remains available on the SBA website on a page entitled, "Paycheck Protection Program (PPP) FOIA," available at, https://data.sba.gov/dataset/ppp-foia (last visited Oct. 5, 2026). JA 3 (*Id.* ¶¶ 3-4). The data is contained in linked spreadsheets that are easily accessible, navigable, and downloadable by the public, as Defendants did here. JA 4-5 (*Id.* ¶¶ 8-9).[1] Once a spreadsheet is downloaded from this webpage, one can access all details

[1] The spreadsheets located on this webpage that contain the PPP data for loans under and over $150,000 are organized alphabetically by the states in which the participants are located. JA 3 (Whitten Decl. ¶ 4). The relevant spreadsheets for this case are titled,

regarding each Defendant's participation in the program, including each Defendant's loan application date, loan approval date, loan approval amount, and date of forgiveness. JA 5 (*Id.* ¶ 9). As such, this information conclusively establishes each Defendant's participation in the PPP program and the date upon which each Defendant received PPP funds. JA 5 (*Id.* ¶ 11).

Significantly, the webpage lists the publication date of this information as March 3, 2021 (years *before* the Complaint's filing) and the "last modification date" of October 21, 2024 (nearly six months *before* the Complaint's filing) JA 3-4 (*Id.* ¶ 5). A snapshot of the page is below:



SBA U.S. Small Business Administration

Open data | Datasets Topics About Office of Capital Access open datasets

Home > Open data > Datasets > Paycheck Protection Program (PPP) FOIA

# Paycheck Protection Program (PPP) FOIA

SBA open dataset providing loan-level data on all disbursed PPP loans.

## Data and resources

- PPP Data Dictionary.xlsx (xlsx)
- public_150k_plus_240930.csv (csv)
- public_up_to_150k_1_240930.csv (csv)
- public_up_to_150k_2_240930.csv (csv)
- public_up_to_150k_3_240930.csv (csv)
- public_up_to_150k_4_240930.csv (csv)
- public_up_to_150k_5_240930.csv (csv)
- public_up_to_150k_6_240930.csv (csv)
- public_up_to_150k_7_240930.csv (csv)
- public_up_to_150k_8_240930.csv (csv)
- public_up_to_150k_9_240930.csv (csv)
- public_up_to_150k_10_240930.csv (csv)
- public_up_to_150k_11_240930.csv (csv)
- public_up_to_150k_12_240930.csv (csv)

## Additional information

| | |
|---|---|
| **Publisher** | U.S. Small Business Administration |
| **Program** | Program Management and Administration |
| **Issue date** | March 3, 2021 |
| **Last modified** | October 21, 2024 |

These dates show that not only was information demonstrating Defendants' PPP participation published by the SBA before the filing of the Complaint, but any later modifications were also

---

"public_up_to_150k_10_240930.csv" (spreadsheet containing data pertaining to organizations located in Tennessee that received *less than* $150,000 in PPP funds) and "public_150k_plus_240930.csv" (same, for organizations located in Tennessee that received *greater than* $150,000 in PPP funds).

completed before the Complaint was filed. The WayBack Machine, a web-archival tool in general use and available to anyone on the internet, further confirms the page unchanged from its current form. JA 4 (*Id.* ¶ 7) (showing identical archived page from one week before Complaint's filing). Consistent with these dates, the ProPublica website, which compiled the data disclosed by the SBA including the loan information for all Defendants, shows that it was "last updated October 27, 2024"—again, long before the Complaint was filed. *See* https://projects.propublica.org/corona-virus/bailouts/, (last visited Oct. 5, 2026), JA 113 (ProPublica.org screenshot).

Like the other sources Defendants pointed to in their motions to dismiss, the SBA webpage and its navigable datasets constitute a "report" for purposes of the public-disclosure bar. The webpage is contained on SBA.gov, a government agency website that is accessible, searchable, and free to access by any member of the public. *See United States ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111, 123-24 (D.D.C. 2015) (finding government webpages a "report" under the FCA and relying on, *inter alia*, S*chindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401 (2011)).

This evidence demonstrates conclusively that Defendants' participation in the PPP program and all pertinent details of that participation were publicly disclosed by the SBA before Relator filed its Complaint. In fact, Relator concedes, as he must, that these loan details were publicly disclosed before the Complaint was filed. *See* JA 1 (Stip. ¶ 4).

**2. Defendants' § 501(c) status was publicly disclosed before the Complaint was filed.**

Relator has also stipulated that each Defendant's § 501(c) classification was also publicly available prior to the filing of the Complaint. JA 1 (*Id.* ¶ 2). In addition, this information is available publicly through the IRS's tax-exempt organization search website (https://apps.irs.gov/app/eos/). That site links to all non-profit organizations' annual Form 990s, which list the specific 501(c) type

for each entity. For each of the 16 Defendants, there is a Form 990 that lists the Defendant's 501(c) status and that was filed before the Complaint in this case. JA 6 (Whitten Decl. ¶¶ 15-16). No disputed fact exists as to the timing or fact of public disclosure of Defendants' 501(c) status.

### 3. Defendants' ineligibility for PPP loans at the time they received them was publicly disclosed by the SBA's interim rules before the Complaint was filed.

Finally, Defendants' ineligibility for PPP loans at the time they received the benefits was publicly disclosed well before the Complaint was filed in this case—as early as the SBA's first interim final PPP rule on April 15, 2020. That rule identified § 501(c)(3) and (c)(19) organizations as the only § 501(c) organizations eligible. In other words, all *other* types of § 501(c) organizations were *categorically ineligible*, including, as relevant here, § 501(c)(6), (c)(7), (c)(8), and (c)(13) organizations like the Defendants.[2] JA 75 (DE 61-9) (*Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020).)) ("April 2020 Rule"). The Court took judicial notice of this and other rules in its Order (DE 149 at PageID #885), as is statutorily required. *See* 44 U.S.C. § 1507 (stating that "[t]he contents of the Federal Register shall be judicially noticed.").

That categorical ineligibility continued until the eligibility requirements were later amended, as follows:

- For **§ 501(c)(6)** organizations, they remained ineligible until January 12, 2021. *See* JA 84 (*Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by Economic Aid Act*, 86 Fed. Reg. 3692, 3692-3712 (January 14, 2021) ("January 2021 Rule").

- For **§ 501(c)(7), (8), and (13)** organizations, they remained ineligible until March 18, 2021. *See* JA 104, (DE 61-10) (*Business Loan Program Temporary Changes; Paycheck Protection Program as Amended by American Rescue Plan Act*, 86 Fed. Reg. 15083, 15083-15089 (March 22, 2021)) ("March 2021 Rule").

[2] The specific organization types of each Defendant appear in Table 1, *infra*.

Cross-referencing the publicly disclosed information regarding when each Defendant's first PPP loan was approved, every Defendant obtained its PPP loan during the period it was ineligible, as summarized in **Table 1** below:

**TABLE 1**

| Defendant | Org. type | Date of loan approval[3] | Date of public disclosure of loan approval | Date of public disclosure of categorical ineligibility | Date ineligibility ended |
|---|---|---|---|---|---|
| | (Source: Stipulation, IRS release, JA 1, 6) | (Source: SBA release of PPP loan info., JA 5) | (Source: SBA release of PPP loan info., JA 3) | (Source: April 2020 Rule, JA 75) | (Source: as indicated below) |
| Tullahoma Chamber of Commerce | 501(c)(6) | 12/27/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |
| Tennessee Valley Public Power Ass'n, Inc. | 501(c)(6) | 4/14/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |
| Home Builders Ass'n of Greater Knoxville, Inc. | 501(c)(6) | 4/29/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |
| Knoxville Academy of Medicine | 501(c)(6) | 4/14/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |
| Homebuilders Ass'n of Greater Chattanooga | 501(c)(6) | 6/19/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |

[3] For Defendants that had two loans, "Date of loan approval" refers to the date the first loan was approved.

| Defendant | Org. type | Date of loan approval[3] | Date of public disclosure of loan approval | Date of public disclosure of categorical ineligibility | Date ineligibility ended |
|---|---|---|---|---|---|
| | (Source: Stipulation, IRS release, JA 1, 6) | (Source: SBA release of PPP loan info., JA 5) | (Source: SBA release of PPP loan info., JA 3) | (Source: April 2020 Rule, JA 75) | (Source: as indicated below) |
| Rogersville-Hawkins County Chamber of Commerce | 501(c)(6) | 4/28/2020 | 3/3/2021 | 4/15/2020 | 1/12/2021<br><br>(JA 84 (January 2021 Rule)) |
| Lakewood Golf & Country Club | 501(c)(7) | 4/16/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| River Bend Country Club, Inc. | 501(c)(7) | 4/16/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Fort Loudoun Yacht Club, Inc. | 501(c)(7) | 4/29/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Knoxville Racquet Club | 501(c)(7) | 4/16/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Green Meadow Country Club, Inc. | 501(c)(7) | 4/6/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Signal Mountain Golf & Country Club | 501(c)(7) | 4/15/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Shelbyville Moose Lodge No. 2197 | 501(c)(8) | 4/13/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |

| Defendant | Org. type | Date of loan approval[3] | Date of public disclosure of loan approval | Date of public disclosure of categorical ineligibility | Date ineligibility ended |
| --- | --- | --- | --- | --- | --- |
| | (Source: Stipulation, IRS release, JA 1, 6) | (Source: SBA release of PPP loan info., JA 5) | (Source: SBA release of PPP loan info., JA 3) | (Source: April 2020 Rule, JA 75) | (Source: as indicated below) |
| Greeneville Moose Lodge No. 692 | 501(c)(8) | 4/10/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| FOP Volunteer Lodge No. 2 | 501(c)(8) | 5/6/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |
| Oak Grove Cemetery Ass'n | 501(c)(13) | 5/8/2020 | 3/3/2021 | 4/15/2020 | 3/18/2021<br><br>(JA 104 (March 2021 Rule)) |

Accordingly, there is no disputed fact that it was public knowledge that organizations with Defendants' various statuses under § 501(c) were ineligible when they received the PPP benefits. And this ineligibility was categorical and unconditional — no interim final rule, SBA guidance, or exception permitted a § 501(c)(6), (7), (8), or (13) organization to qualify for a PPP loan before its respective eligibility date, foreclosing any argument that individualized inquiry is needed to determine any Defendant's ineligibility.

* * *

A statement or allegation satisfies the inference-of-fraud element if "the information is sufficient to put the government on notice of the likelihood of related fraudulent activity." *Rahimi*, 3 F.4th at 823 (citation omitted). Here, the undisputed facts establish more than sufficient information to put the government on notice. Indeed, *all* the relevant information underlying Relator's

claims was public months and years before Relator filed the Complaint, including the loan details, the various entities' details, and the PPP eligibility rules. This is more than enough under *Rahimi* and the X+Y=Z formula used to determine if readers or listeners of public information can infer that a fraud has been committed. *See, e.g., Holloway,* 960 F.3d at 844.[4] Accordingly, the first element of the public-disclosure bar is conclusively established.

**B. The public disclosures are substantially the same as Relator's allegations.**

The second element of the public-disclosure bar considers "whether the allegations in the complaint are 'substantially the same' as those contained in the public disclosures." *Holloway*, 960 F.3d at 849. The statute specifically directs courts to dismiss an action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." § 3730(e)(4)(A). The key inquiry to determine whether allegations are "substantially the same" as prior public disclosures is "whether the disclosures could have put the government on notice of the fraud alleged in the *qui tam* complaint." *Maur*, 981 F.3d at 523. The statute does not require that a fraud be publicly disclosed. Rather, "[a]ll that is required is that public disclosures put the government on notice to the possibility of fraud." *United States ex rel. Dingle v. Bioport Corp*., 388 F.3d 209, 214 (6th Cir. 2004).

Here, the allegations in the Complaint are more than substantially the same as the public disclosures—they are essentially identical. The Court's own description of Relator's allegations illustrates this. The Court described those allegations as: "(1) a Defendant applied and certified

[4] This formula was described at length in earlier briefing. *See, e.g.,* DE 63 at PageID # 407-08 (describing application of the formula to this case); DE 126 at PageID # 787-88 (same). In short, "[I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements." *Holloway*, 960 F.3d at 844 (quoting *United States ex rel. Jones v. Horizon Healthcare Corp*., 160 F.3d 326, 331 (6th Cir. 1998)). For a public disclosure of the fraud to be inferred, "the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed." *Holloway*, 960 F.3d at 844 (quoting *Jones*, 160 F.3d at 331).

eligibility for a PPP loan, (2) the Defendant received such benefits, and (3) the Defendant was actually ineligible for PPP loans when it applied because organizations with its 501(c) status were ineligible at that time." (DE 149 at PageID #881, n. 6.) Every detail in the above description was publicly disclosed long before the Complaint was filed. First, the SBA data regarding each Defendant's PPP loan shows that each Defendant applied for a PPP loan. JA 5 (Whitten Decl. ¶ 11). In fact, the blank application showing the information and certifications applicants needed to provide was also publicly available. *See* JA 109-12 (PPP loan application). Second, that data shows that each Defendant later received such benefits. JA 5 (Whitten Decl. ¶ 11). Third, the record establishes that (a) SBA's relevant rules and regulations regarding PPP loans, including the dates 501(c)(6), (7), (8) and (13) organizations became eligible, were publicly disclosed, *see* JA 84, 104 (January 2021 Rule, March 2021 Rule), and (b) organizations with Defendants' 501(c) status at the time they received the funds were ineligible for those funds. JA 1 (Stip. ¶ 2); JA 84, 104 (January 2021 Rule, March 2021 Rule). *See also* Table 1, *supra*.

Relator's allegations thus mirror the public disclosures in every respect, leaving no genuine dispute as to whether they are "substantially the same."

### C. Relator is not an original source.

Once there has been a public disclosure, the Court "shall dismiss [the] action" unless the relator is an original source of the information. § 3730(e)(4)(A). A person is an "original source" if, before the public disclosure, that person has voluntarily disclosed to the government the information on which the transactions in a claim are based, or that person has knowledge that is independent of, and materially adds to, the publicly disclosed transactions. § 3730(e)(4)(B).

The Tarbell Group is not an original source of any information underlying its claims. As noted, Relator has stipulated that it is not an original source. JA 1 (Stip. ¶ 3). Nor could it

contend otherwise, as the Tarbell Group did not even *exist* until 2024—years after the PPP loans at issue were applied for, forgiven, and disclosed publicly. *See* JA 114 (DE 61-5) (judicially noticed webpage from Virginia State Corporation Commission showing the Tarbell Group's formation date.))

## III. CONCLUSION

Based on the undisputed material facts, including all the previously judicially noticed evidence and the evidence cited herein, the public-disclosure bar precludes Relator's lawsuit. For the foregoing reasons, Defendants respectfully request that the Court grant the motion for summary judgment with respect to all 16 Defendants and dismiss Relator's Complaint with prejudice.

Dated: October 6, 2026

Respectfully submitted,


/s/ *Frankie N. Spero*
Frankie N. Spero (No. 29408)
fspero@bradley.com
Ty E. Howard (No. 26132)
thoward@bradley.com
Hannah Grewal (No. 043089)
hgrewal@bradley.com
Bradley Arant Boult Cummings LLP
ONE 22 ONE, 1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582

*Counsel for Lakewood Golf and Country Club, RiverBend Country Club, Inc., and the Tullahoma Chamber of Commerce*

/s/ *Zachary H. Greene*
Zachary H. Greene
zac.greene@millermartin.com
J. Andrew Whitten
andrew.whitten@millermartin.com
Larry L. Cash
larry.cash@millermartin.com
Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
(423) 756-6600

*Counsel for Tennessee Valley Public Power Association, Inc.*

/s/ *Brent E. Siler*
Brent E. Siler
brent.siler@arlaw.com
M. Rhett DeHart
Rhett.dehart@arlaw.com
Adams and Reese LLP
6075 Poplar Avenue, Suite 700

/s/ *Edward G. Phillips*
Edward G. Phillips
ephillips@kramer-rayson.com
Bethany Wilson
bwilson@kramer-rayson.com
Kramer Rayson LLP
800 S. Gay Street, Suite 2500

Memphis, TN 38119
(901) 525-3234

*Counsel for Fort Loudoun Yacht Club, Inc.*

Knoxville, TN 37929
(865) 525-5134

*Counsel for Knoxville Racquet Club, Inc.*

/s/ *Lindsey Lovingood Hobbs*
Lindsey L. Hobbs
lhobbs@hdclaw.com
John P. Taylor
jtaylor@hdclaw.com
Hodges, Doughty & Carson, PLLC
445 S. Gay Street, Suite 400
Knoxville, TN 37902
865-292-2307

*Counsel for Green Meadow Country Club, Inc.*

/s/ *Adam G.Russell*
Adam Russell
arussell@fisher-russell.com
Fisher Russell PLLC
9950 Kingston Pike, Suite 301
Knoxville, TN 37922
(865) 259-7777

*Counsel for Home Builders Association of Greater Knoxville, Inc.*

/s/ *Wade V. Davies*
Wade V. Davies
wdavies@wadedavies.law
The Davies Law Firm, PLLC
800 S. Gay Street, Suite 700
Knoxville, TN 37929
(865) 686-6333

*Counsel for Knoxville Academy of Medicine*

/s/ *Gavin A. Smelcer*
Gavin A. Smelcer (No. 039202)
gsmelcer@occ.law
John E. Owings (No. 013373)
jeowings@occ.law
Owings, Coleman & Coalson
110 Triplett Lane
Knoxville, TN 37922
(865) 521-3024

*Counsel for Oak Grove Cemetery Association*

/s/ *David E. Harrison*
David E. Harrison
dharrison@gkhpc.com
Caroline Hood
chood@gkhpc.com
Grant, Konvalinka & Harrison, P.C.
633 Chestnut Street, Suite 900
Chattanooga, TN 37450
(423) 756-8400

*Counsel for Homebuilders Association of Greater Chattanooga*

/s/ *Nancy M. Erikson*
Nancy M. Eriksen
neriksen@bakerdonelson.com
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
(423) 209-4115
neriksen@bakerdonelson.com

Thomas H. Barnard (MD Bar # 0712170001)
tbarnard@bakerdonelson.com
Annie M. Kenville (MD Bar # 1712140041)
akenville@bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
100 Light Street, 19th Floor
Baltimore, MD 21202
(410) 685-1120

*Counsel for Signal Mountain Golf and Country Club and Rogersville-Hawkins County Chamber of Commerce*

/s/ *Everett L. Hixon, III*
Everett L. Hixon, III
rhixon@chartwelllaw.com
James B. M. Hooper, Jr
jhooper@chartwelllaw.com
Chartwell Law
100 W. Martin Luther King Blvd
Suite 300
Chattanooga, TN 37402
Telephone: (423) 910-2200

*Counsel for Shelbyville Lodge No. 2197 Loyal Order of Moose and Greeneville Lodge No. 692 Loyal Order of Moose*

/s/ *Glenn R. Walter*
Glenn R. Walter (BPR #012842)
gwalter@lewisthomason.com
Lewis Thomason, P.C.
900 S. Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37902-2425
(865) 546-4646

*Counsel for Defendant Fraternal Order of Police – Volunteer Lodge No. 2*